UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 13-5048
(C.A. No. 12-0916)

LARRY HAGAN, INDIVIDUALLY AND AS                         Appellant,
FATHER AND NEXT FRIEND OF MINOR
L.C.H. AND L.C.H., MINOR BY AND THROUGH
HIS FATHER AND NEXT FRIEND, LARRY HAGAN

v.

UNITED STATES OF AMERICA,                                Appellee.

### APPELLEE'S MOTION FOR SUMMARY AFFIRMANCE

Appellee respectfully moves for summary affirmance of the Honorable Robert L. Wilkins December 14, 2012, Memorandum Opinion and Order, (R. 21-22, Exhibits A and B, respectively)[1], granting the Appellee's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (R. 10). The "merits of this appeal are so clear as to make summary affirmance proper," *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir.), *cert. denied*, 449 U.S. 994 (1980); *accord Ambach v. Bell*, 686 F.2d 974, 979 (D.C. Cir. 1982), and "no benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc.*

---

[1] "R." followed by a number refers to the document corresponding to that number in the District Court's docket sheet.

*v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987).

## Introduction

Appellants seek reversal of the District Court's dismissal of their Complaint against the United States for want of subject matter jurisdiction. Relying on the Federal Tort Claims Act (FTCA), 28 U.S.C. §§2671 et seq., Appellants sought to recover economic and non-economic damages for the alleged inadequate care L.C.H. received when he was five months old, which they claim led to L.C.H.'s brain injury. R. 1, ¶¶ 85-86, 103, 106.

Granting the United States' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the District Court held that Appellants had failed to carry their burden to establish the Court's jurisdiction because their claim had accrued more than two years before they filed their administrative claim. The District Court determined that Appellants' claim accrued when Mr. Hagan knew of the relevant injury and its cause in September 2007. Since Mr. Hagan did not file his and L.C.H.'s administrative claims until July 2010, the District Court lacked jurisdiction over Appellants' claims.

On appeal, Appellants raise four issues: (1) the District Court erred in finding that Plaintiffs' claim was untimely pursuant to the statute of limitations of 28 U.S.C. 2401(b); (2) the District Court erred as a matter of law in dismissing Plaintiffs' Complaint without allowing Plaintiffs to conduct jurisdictional

discovery; (3) the District Court erred in finding that Plaintiffs' claim was untimely absent medical expert testimony on the accrual of the injury; and (4) the District Court was required to review Defendant's Motion to Dismiss as a rule 12(b)(6) motion instead of a rule 12(b)(1) motion for lack of jurisdiction.

Because the merits of this appeal are so clear as to make summary affirmance proper, and no benefit will be gained from further briefing and argument of the issues presented, this Court should grant Appellee's Motion for Summary Affirmance and deny this appeal.

## FACTUAL BACKGROUND

The claims in this case arise from a stroke L.C.H. suffered when he was approximately five months old in September 2007. L.C.H. was born prematurely at the National Naval Medical Center ("NNMC") in April 2007. R. 1, ¶16. At birth he weighed less than two pounds, and he remained in the hospital for about 10 weeks after his birth, in part because he had "developed bilious stomach residual contents and had dilated loops of bowel." *Id.* Following discharge and over the next few months, L.C.H. continued to have gastrointestinal difficulties. *Id.* ¶¶ 23, 32-38, 42-55.

In September 2007, L.C.H. suffered a stroke that led to his current condition. R. 10 at 3; R. 1 ¶ 86; *see also* R. 21 at 2.[2] During a visit to DeWitt Army Community Hospital, doctors referred L.C.H. to the emergency department at NNMC. R. 1 ¶ 56. At NNMC, a doctor reported a concern of a bowel obstruction. *Id.* ¶ 64. L.C.H. was then taken to Walter Reed for surgical evaluation. *Id.* ¶ 66. After being evaluated, L.C.H. was transferred to Children's National Medical Center ("Children's"). During that transfer L.C.H. experienced decreased oxygen saturation, and "[i]t was likely during this period of low oxygen saturation and low blood pressure that L.C.H. experienced a hypoxic ischemic insult, i.e. a stroke." R. 10 at 3 (footnote omitted); *see also* R. 1 ¶ 86; R. 21 at 3. Mr. Hagan admits that he was told of the stroke in September 2007 and that he "knew of the serious state of L.C.H.'s health." R. 14 at 8.

On September 11, 2007, L.C.H. suffered a seizure, (R. 18-1 at A10; *see also*, R. 21 at 3), following surgeries at Children's to remove a bowel obstruction and portions of the L.C.H.'s bowels, (R. 1 ¶¶ 92, 95-99). A CT scan of L.C.H's brain that same day revealed "bilateral-parietal occipital infarcts as well as bilateral temporal lobes infarcts." R. 18-1 at A12; *see also*, R. 21 at 3. An infarct is a

---

[2] This is not in dispute. The permanent injuries from which L.C.H. now suffers occurred no later than September 2007. "We [Appellant Larry Hagan and his attorneys] have thus ascertained that the permanent injuries from which [L.C.H.] now suffers were caused by the failure to timely diagnose and treat his volvulus in August or September 2007." R. 18-1 at A31, A38.

"localized area of tissue death caused by an interruption in the blood supply to the area." *See* Mosby Elsevier, *Mosby's Dictionary of Medicine, Nursing & Health Professions* 960 (8th ed. 2009); *see also*, R. 21 at 3.

Appellant immediately began to start to question the care L.C.H. had received. On September 12, 2007, Mr. Hagan attempted to copy L.C.H.'s bedside charts and records and expressed "the desire to review some of [L.C.H.]'s clinical course over the past 24 hours" with Dr. Catherine Corriveau, the PICU Attending at CNMC. R. 18-1 at A13. Mr. Hagan and his then-wife were briefed by Dr. Corriveau, the Neurology Service, and Social Work about the results of L.C.H.'s neurological tests and scans. R. 18-1, at A13. Dr. Corriveau specifically documented that the "parents understand the severity of neurological and intestinal injuries." R. 18-1 at A13; *see also*, R. 21 at 3. Later, in a September 20, 2007, Social Work note, the provider noted that, "[L.C.H's parents] ask thoughtful questions & have a good understanding of [L.C.H]'s illness-current plan of care," and that the "parents have met w/ Neurology to discuss MRI results." R. 18-1 at A14.

On September 26, 2007, a Children's doctor recorded on a Consultation Request and Report that L.C.H.'s "…head shows stable, right parietal encephalomalacia. CT head (9/11) edema to bilateral and temporal-parietal lobes and hypodensity c/w watershed infarcts." R. 18-1 at A15; *see also*, R. 21 at 3. In

-5-

October 2007, the L.C.H.'s parents "expressed concern about L.C.H.'s neurologic status and the need for repeat CTs and MRIs due to L.C.H.'s earlier stroke in the PICU."  R. 18 at A18, A19-20; *see also*, R. 21 at 4.

L.C.H.'s medical records show that even though that his outward appearance following his stroke was often outwardly "normal" or without further apparent complication during pediatric visits, L.C.H. was consistently diagnosed with neurological delays, stroke syndrome, motor skill developmental delays, continued to be seen by the High Risk Clinic for developmental delays, had a referral for weekly appointments for therapy by the Fairfax County Early Intervention Program,[3] and was aware of the need for further neurologist consultations.  *See e.g.,* R. 14-1 at A05, Medical Records dated December 13, 2007,  ("Problems. . . . DELAYED MILESTONES, visit for: screening mental/developmental disorders . . . STROKE SYNDROME."), A07 (referencing history of stroke and past MRI, need to schedule follow-up appointment with neurology); Medical Record, dated January 24, 2008, A09 (referencing delayed milestones, stroke syndrome, and that visit was for screening for mental and developmental disorders); A11 (references need to consult with county for delayed milestones.); Medical Records dated February 21, 2008, A13 (referencing delayed milestones, and that visit was for

---

[3]   This organization "provide[s] early intervention services for infants and toddlers under the age of three years who have a developmental delay, atypical development, or a diagnosis which commonly results in developmental delays." Available at http://www.fairfaxcounty.gov/csb/itc/getting-started/

screening for mental and developmental disorders); A14 (references that plaintiff as 10 month is functioning at the 4-6 month level of development of motor skills, that he would benefit from services of, and that L.C.H. should be seen within 3 months at the "High Risk Clinic"); A16 (referencing delayed milestones, stroke syndrome, delay in gross motor skill development, and that visit was for screening for mental and developmental disorders); A17 (noting on February 22, 2008, that L.C.H. would be receiving weekly therapy sessions by Fairfax County's Early Intervention program); A18 (noting that L.C.H. has stroke syndrome and developmental delays; also notes that L.C.H. has appointment with pediatric neurologist on February 25, 2008, and that repeat MRI will be necessary at some point); A20, Medical Record dated April 10, 2008 (delayed milestones, stroke syndrome, delayed gross motor development).

A February 20, 2009 MRI revealed "extensive areas of gliosis and encephalomalacia." R. 1 ¶ 105. Appellant stated below that he "did not know of this finding nor understand its impact on L.C.H. until 2010." R. 14 at 13. According to the administrative claims filed by Hagan and L.C.H., when L.C.H. was diagnosed with hypoxic ischemic encephalopathy around March 2009, "imaging studies in 2009 did not reveal any new lesions when compared with the brain imaging studies performed in September 2007." R. 18-1 at A31, A38.

Appellants filed a written claim with the government around July 23, 2010, (R.21 at 5), and filed their Complaint with the District Court on June 6, 2012, (R. 1 at 1). Appellants' Complaint contained two counts: Count I was titled "Medical Malpractice—Negligence," while Count II was for Appellant Larry Hagan's "services and expenses" for L.C.H. Appellants sought $50,000,000 in damages. *See generally* R. 1.

## I. ARGUMENT

### A. The District Court Correctly Found that Appellants' claim was untimely under 28 U.S.C. 2401(b)

Summary affirmance is appropriate because the District Court correctly ruled that Appellants' claim was untimely under 28 U.S.C. 2401(b). Appellants filed their claim more than two years after it accrued, and it is therefore barred. To invoke the FTCA's limited waiver of sovereign immunity, the FTCA requires the filing of an administrative claim with the appropriate federal agency before filing suit. *See* 28 U.S.C. §§ 2675(a), 2679(d)(5). A claim pursuant to the FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . ." 28 U.S.C. §2401(b).

The Supreme Court has held that a claim accrues in this context when the claimant knew or should have known of the injury and the cause of the injury.

*United States v. Kubrick*, 444 U.S. 111, 120 (1979).⁴  A claim accrues under the FTCA when the "plaintiff has discovered both his injury and its cause," regardless of whether the plaintiff knows the injury was negligently inflicted.  *Id.* at 120; *see also Sexton v. United States*, 832 F.2d 629, 633 (D.C. Cir. 1987).  The Court further stated that a plaintiff

> …armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute. . . . If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*Kubrick*, 444 U.S. at 123.

In its motion to dismiss for lack of subject matter jurisdiction, Appellee cited numerous existing medical records that documented that Appellant's claim accrued no later than September 2007.  In their response to Appellee's motion to dismiss, Appellants did not contest key facts that the District Court found significant in

---

⁴ In their Statement of Issues to be Raised, Appellants seek to add a new requirement for determining when a claim accrues, namely, that expert medical testimony is necessary to establish when a claim accrues.  Appellants' novel argument is not based in identifiable precedent and is not necessary for courts to apply the *Kubrick* standard.  Nor, importantly, did Appellants proffer such expert testimony or make this claim in the District Court.

determining when Appellants' claim accrued nor did Mr. Hagan raise any new facts that would lend themselves to any outcome other than what the District Court ultimately concluded. Because Appellants failed to raise legitimate disputes to these facts, they could not meet their burden to establish jurisdiction.

The District Court considered documents that the parties provided to the Court outside of the pleadings. In support of its motion to dismiss, Appellee provided medical records, which Appellant had submitted as part of the administrative claims process. R. 18-1 at A1. Appellee also submitted declarations of a doctor and social worker involved in L.C.H.'s care. *See* R. 18-1 at A19-22. In their opposition, Appellants submitted medical records and affidavits, including one by Mr. Hagan. *See generally* R. 14-1. In considering these submissions by the parties, to include Mr. Hagan's affidavit, the District Court reasoned

> Hagan knew his child had a stroke in September 2007. Medical records indicate brain tissue death in September 2007. Medical records also indicate that Hagan and his wife were told of severe neurological injuries in September 2007. And medical records indicate concerns expressed by Hagan and his wife about L.C.H.'s neurological health. Hagan, who has the burden to establish jurisdiction, submitted an affidavit that neglected to offer any rebuttal to why these records and their findings should not start the accrual clock in September 2007.

R. 21 at 9.  Specifically, Appellants did not contest that:  (1) Mr. Hagan was told that L.C.H. suffered a stroke and brain injury on September 12, 2007; (2) Dr. Corriveau and others told him of the nature and severity of L.C.H.'s brain injury; and (3) a CT scan taken soon after the September 2007 stroke indicated significant areas of tissue death in L.C.H.'s brain.  *Id*.  Importantly, Appellant admitted in his administrative claim that the CT scan of L.C.H. "in 2009 did not reveal any new lesions when compared with the brain imaging studies performed in September 2007 after" L.C.H.'s stroke.  R. 18-1 at A31, A38.  As the District Court correctly observed, Appellant failed to establish that his claim accrued later than September 2007.  *See*  R. 21 at 9.

In short, by September 2007, Appellant knew that L.C.H. had suffered neurological and intestinal injuries and their cause.  *See Kubrik*, 444 U.S. at 120.  This was 2 years and 10 months before Appellant filed his initial administrative claim with the Army.  "Armed with the facts about the harm done to" L.C.H., in September 2007, Appellant should have sought assistance from the legal and medical communities.  *See id*.  His failure to do so and to file his administrative claim within the required time, bars his suit against Appellee.

The District Court correctly ruled on the date of accrual of Appellants' claim. Despite multiple opportunities, Appellants did not provide the District Court with any facts that would allow it to rule otherwise.[5]

**B.     The District Court Correctly Found that Appellant Failed to Satisfy his Burden to Establish the Court's Jurisdiction and Properly Dismissed Based on Appellee's Rule 12(b)(1) Motion to Dismiss**

The District Court properly dismissed Appellants' case pursuant Fed. R. Civ. P. 12(b)(1) because Appellants failed to establish the Court's jurisdiction. In Appellants' attempt to counter Appellee's motion to dismiss, Appellant primarily relied upon a District Court opinion, *Smith v. United States*, 518 F.Supp.2d. 139 (D.D.C. 2007), to establish that 28 U.S.C. §2401(b) was a non-jurisdictional statute of limitations. Appellants' reliance was misplaced as the District Court correctly found that the holding in *Smith* was contrary to D.C. Circuit case law and Supreme Court case law.

---

[5] Appellants, in their Statement of Issues to be Raised, suggest that the District Court erred in not granting jurisdictional discovery. However, Appellants did not specifically move the District Court for jurisdictional discovery. *See e.g.* R. 14 at 22 ("Should this Court find that more evidence is needed, Plaintiffs are entitled to conduct further discovery to prove the timeliness of their claim."). Furthermore, Appellants did not contest key facts, which the District Court correctly found determined the accrual of the claim. Therefore, even if the statute of limitations were considered an affirmative defense, Appellant did not raise a genuine issue of material fact before the District Court regarding accrual of Appellant's claim that could survive a motion for summary judgment or establish a basis for equitable tolling.

It is a settled principal of federal law that, as sovereign, the United States is absolutely immune from suit and, unless Congress has consented to such cause of action, there is no jurisdiction in any court to entertain such a claim against the United States. *United States v. Testan*, 424 U.S. 392 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.").

The FTCA's limited waiver of the United States' sovereign immunity for certain torts of Federal employees, which are committed within the scope of their employment requires that claimants meet the jurisdictional prerequisite of filing an administrative claim with the appropriate agency before filing suit in district court. *See* 28 U.S.C. §§ 2675(a), 2679(d)(5); *Simpkins v. District of Columbia Government*, 108 F.3d 366, 371 (D.C. Cir.1997) (administrative claim requirement is a jurisdictional requirement to suit under the FTCA). When a statute specifically requires exhaustion of administrative remedies prior to bringing a judicial action, then exhaustion is mandatory. *McCarthy v. Madigan*, 503 U.S. 140 (1992).

One of the jurisdictional prerequisites to filing suit under the FTCA is meeting the statute of limitations. Title 28 U.S.C. § 2401(b) provides,

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date

-13-

> of mailing, by certified or registered mail, of notice a final denial of the claim by the agency to which it was presented.

"Statutes of limitations…represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Kubrick*, 444 U.S. at 117. "Section 2401(b)…is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." Id. at 117. Moreover, as § 2401(b) imposes a condition on the United States' limited waiver of sovereign immunity, courts "should not take it upon [themselves] to extend the waiver beyond that which Congress intended." *Id.* at 117-18; *see also Sexton v. United States*, 832 F.2d 629, 633 (D.C. Cir. 1987).

In the present case, Appellants relied on the District Court case *Smith v. Unites States*, for the proposition that the FTCA's statute of limitations is not jurisdictional. *See* 518 F.Supp.2d 139, 147 (D.D.C. 2007). The problem with Appellant's reliance on *Smith* is that it lacks any foundation after later Circuit Court and Supreme Court decisions. In holding that 28 U.S.C. §2401(b) was non-jurisdictional, *Smith* relied upon the belief that statutes of limitation are generally non-jurisdictional and that other similar statutes of limitation, such as 28 U.S.C. §

2401(a) and 28 U.S.C. § 2501, were not jurisdictional. *Smith*, 518 F.Supp.2d at 147 ("'[a] statute of limitations defense ... is not 'jurisdictional' in nature" (citations omitted)) and 147 n.6). As the District Court correctly found, however, these rationales for *Smith* are no longer valid.

The Supreme Court in *John R. Sand & Gravel Co. v. United States* found that Federal statutes of limitation that are a condition on the waiver of sovereign immunity or facilitate the administration of claims are jurisdictional. *See John R. Sand*, 552 U.S. 130, 133 (2008). Specifically, the Supreme Court found that 28 U.S.C. §2501 was jurisdictional, thereby directly undercutting *Smith's* assumptions that statutes of limitation generally are non-jurisdictional and that specifically 28 U.S.C. § 2501 is not jurisdictional. *See John R. Sand*, 552 U.S. at 134.

Similarly, it is the clear and well-settled precedent of this Court that 28 U.S.C. §2401(a) is a jurisdictional statute of limitations. *See P & V Enterprises v. U.S. Army Corps of Engineers*, 516 F.3d 1021, 1026 (D.C. Cir. 2008) ("The court has long held that section 2401(a) creates 'a jurisdictional condition attached to the government's waiver of sovereign immunity.'" (citations omitted)); *see also*, *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987) ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity.")

In dismissing Appellant's case for lack of subject matter jurisdiction, the District Court noted that this Court has not ruled specifically on whether 28 U.S.C. § 2401 (b) is jurisdictional but found the Supreme Court's holding in *John R. Sand* and the wording of the statute clear. *See In re Swine Flu Immunization Prods. Liability Litig.*, 880 F.2d 1439, 1442 (D.C. Cir 1989) (assuming without deciding that 28 U.S.C. § 2401 (b) is jurisdictional)[6]. Also, as discussed above, Circuit precedent is otherwise well-settled and clear. The District Court correctly found that, "[t]he language of the statute itself, combined with recent Supreme Court and Circuit Court precedent, indicates that the FTCA's statute of limitations should be considered a jurisdictional bar to a claim." R. 22 at 7. As the District Court noted, "The language found jurisdictional in *John R. Sand*, 'shall be barred,' is the same language used in 28 U.S.C. § 2401(a). But the language at issue here [in 28 U.S.C. § 2401(b)] is even stronger: a tort claim not brought after two years 'shall be forever barred.'" R. 21 at 7.

---

[6] The weight of authority in other Circuits that have considered the issue supports the conclusion that 28 U.S.C. § 2401 is a jurisdictional statute of limitation. See e.g., Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003); In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987); Kokotis v. United States Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000); In re FEMA Trailer Formaldehyde Prod. Liab. Litig., 646 F.3d 185, 189 (5th Cir. 2011); T.L ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006); Marley v. United States, 567 F.3d 1030, 1035-36 (9th Cir. 2009); Hart v. Dep't of Labor, 116 F.3d 1338, 1339 (10th Cir. 1997); Dalrymple v. United States, 460 F.3d 1318, 324-26 (11th Cir. 2006); *but see* Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001); *Arteaga v. United States*, 711 F.3d 828, 833 (7th Cir. 2013).

Furthermore, the case law of this Circuit is clear. This Court has held that the administrative claim requirement of the FTCA is a jurisdictional requirement. *Simpkins*, 108 F.3d at 371. Additionally, in regards to the statute of limitation regarding this administrative claim, this Court has consistently found the less absolute language of 28 U.S.C. §2401(a) sufficient to establish that it is a jurisdictional statute of limitations. *See P & V Enterprises*, 516 F.3d at 1026; *Spannaus*, 824 F.2d at 55. Therefore, the more absolute "shall be forever barred" language of 28 U.S.C. § 2401(b) should also be considered jurisdictional. *See* 28 U.S.C. § 2401(b).

Because the law is clear on the subject, there will be no benefit to this Court from further briefing and argument of this issue. Thus, this Court should grand summary affirmance.

## Conclusion

Because the law is so clear, this Court should summarily affirm the District Court's decision granting Appellee's motion for summary judgment.

RONALD C. MACHEN, JR.
United States Attorney

*R. Craig Lawrence*
R. CRAIG LAWRENCE
Assistant United States Attorney

*John J. Gowel*
JOHN J. GOWEL

                          Special Assistant United States Attorney

OF COUNSEL:
Major Scott A. DiRocco
United States Army Litigation Division
Fort Belvoir, VA 22060