**ORAL ARGUMENT NOT YET SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 13-5048

LARRY HAGAN, Individually and
as Father and Next Friend of Minor
L.C.H. and L.C.H., Minor by and
through his Father and Next Friend,
Larry Hagan,                                                    Appellants,

      v.

UNITED STATES OF AMERICA,                                      Appellee.

# FINAL BRIEF FOR APPELLEE

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONALD C. MACHEN JR.,
United States Attorney.

R. CRAIG LAWRENCE,
JOHN J. GOWEL,
Assistant United States Attorneys.

C.A. No. 12-0916

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## Parties

The Appellants are Larry Hagan, individually and as Father and Next Friend of Minor L.C.H. and L.C.H., Minor by and through his Father and Next Friend, Larry Hagan, who were the Plaintiffs in the District Court.  The Appellee is the United States of America, who was the Defendant below.  Movant-intervenor for Appellant is Ms. Dana Wilson.  There is no *amicus curiae*.

## Rulings Under Review

At issue in this appeal is the December 14, 2012, Order and Memorandum Opinion of the Honorable Robert L. Wilkins granting the Defendant's Motion to Dismiss for Lack of Jurisdiction.

## Related Cases

This case has not previously been before this Court.  There are no currently pending related cases.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ..............................................................1

JURISDICTIONAL STATEMENT ........................................................2

COUNTERSTATEMENT OF THE CASE ............................................2

STATEMENT OF THE FACTS.............................................................3

PROCEDURAL HISTORY…...…………………………………………8

SUMMARY OF ARGUMENT ............................................................9

STANDARD OF REVIEW ..................................................................10

ARGUMENT…………………………………………………….......11

I.    The District Court Correctly Found that Mr. Hagan's
      Claim Was Untimely Under 28 U.S.C. § 2401(b)…………………………11

      A.    The District Court Correctly Found That Mr. Hagan's
            Claim Accrued In September 2007, More Than Two
            Years Before He Filed His Administrative Claim,
            And Therefore His Claim Is Time-Barred…………………………..11

      B.    Mr. Hagan's Argument That His Claim Did Not Accrue
            Until The Specific Diagnosis Of Hypoxic Ischemic
            Encephalopathy Was Made Is Unavailing And Is
            Contradicted By Precedent…………………………………………16

      C.    Mr. Hagan Overstates the "Assurances" He Claims He
            Claims To Have Been Given "Months After" September
            2007………………………………………………………………26

II.   The District Court Acted Comfortably Within Its Discretion
      By Denying Appellants' General Request For Discovery…………………28

III.   Mr. Hagan Proffers No Authority for Requiring the District
       Court to Solicit Additional Expert Evidence Prior to
       Dismissing a Medical Malpractice Case for Lack of
       Jurisdiction……………………………………………………………35

IV.    The District Court Correctly Dismissed Mr. Hagan's
       Claims Under Rule 12(b)(1) Because He Failed to Carry
       His Burden to Establish the Court's Jurisdiction…………………………..38

       A.    The District Court Properly Considered the United
             States' Motion to Dismiss Under Rule 12(b)(1)……………………39

       B.    Even if Equitable Tolling Could Apply to the FTCA's
             Statute of Limitations, The Undisputed  Facts of This
             Case Do Not Give Rise to A Claim of Equitable Tolling…………...46

CONCLUSION ....................................................................................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Federal Cases**

*Arteaga v. United States*,
   711 F.3d 828 (7th Cir. 2013) ................................................................43

*Auerbach v. Sverdrup Corp.*,
   829 F.2d 175 (D.C. Cir. 1987) .............................................................10

*Brazzell v. United States*,
   788 F.2d 1352 (8th Cir.1986) ..............................................................11

*Burke v. Washington Hospital Center*,
   293 F.Supp. 1328 (D.D.C. 1968) .........................................................18

*Cada v. Baxter Healthcare Corp.*,
   920 F.2d 446 (7th Cir.1990) ................................................................47

*Cannon v. District of Columbia*,
   717 F. 3d 200 (D.C. Cir. 2013) ...........................................................28

*Canterbury v. Spence*,
   464 F.2d 772 (D.C. Cir. 1972) ............................................................36

*Cedars–Sinai Medical Center v. Shalala*,
   125 F.3d 765 (9th Cir.1997) ................................................................46

*Chappell-Johnson v. Powell*,
   440 F.3d 484 (D.C. Cir. 2006) ............................................................28

*Cheyenne Arapaho Tribes of Oklahoma v. United States*,
   558 F.3d 592 (D.C. Cir. 2009) .........................................................32-33

*Colleen v. United States*,
   842 F.2d 329 (9th Cir. 1988) ..............................................................22

*Convertino v. U.S. Dep't of Justice*,
   684 F.3d 93 (D.C. Cir. 2012) ..............................................................28

*Dalrymple v. United States*,
   460 F.3d 1318 (11th Cir. 2006) ...........................................................43

*Gasperini v. Center for Humanities, Inc.*,
   518 U.S. 415 (1996) ................................................................16, 38, 39

*Goodman Holdings v. Rafidain Bank*,
   26 F.3d 1143 (D.C. Cir. 1994) .......................................................11, 31

*Green v. United States*,
   180 Fed. Appx. 310 (3d Cir. 2006)) ...................................................17

*Gustavan v. United States*,
   655 F.2d 1034 (10th Cir. 1981) ...........................................................25

*Hart v. Dep't of Labor*,
   116 F.3d 1338 (10th Cir. 1997) .................................................................43
*Herbert v. National Academy of Sciences*,
   974 F.2d 192 (D.C. Cir. 1992) .......................................................... 11, 31
*Hughes v. United States*,
   263 F.3d 272 (3d Cir. 2001) .....................................................................43
*Ignatiev v. United States*,
   238 F.3d 464 (D.C. Cir. 2001) ..................................................................31
*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 210 (2d Cir.1987) ......................................................................43
*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*,
   646 F.3d 185 (5th Cir. 2011) ....................................................................43
*In re Swine Flu Immunization Prods. Liability Litig.*,
   880 F.2d 1439 (D.C. Cir 1989) .................................................................43
*Ingram v. United States*,
   443 F.3d 956 (8th Cir.2006) ........................................... 23, 24, 43, 50
*Irwin v. Dep't of Veterans Affairs*,
   498 U.S. 89 (1990) ...................................................................................48
*Jastremski v. United States*,
   737 F.2d 666 (7th Cir. 1984) ....................................................................22
*Jerome Stevens Pharmacy, Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005) ................................................................30
*John R. Sand & Gravel v. United States*,
   552 U.S. 130 (2008) ........................................................................... 41-45
*Johnson v. United States*,
   2005 U.S. Dist. LEXIS 13231 (W.D. Tex, June 30, 2005)....................... 6, 22, 28
*Jones v. Rogers Memorial Hospital*,
   442 F.2d 773 (D.C. Cir. 1971) ........................................................... 18, 19
*June v. United States*,
   --- Fed. Appx. ---, 2013 WL 6773664 (9th Cir. Dec. 24, 2013) ..........................43
*Kerstetter v. United States*,
   57 F.3d 362 (4th Cir. 1995) ............................................................... 20-21
*Kokotis v. United States Postal Serv.*,
   223 F.3d 275 (4th Cir. 2000) ....................................................................43
*Manko v. United States*,
   830 F.2d 831 (8th Cir. 1987) ............................................................. 25-26
*McCarthy v. Madigan*,
   503 U.S. 140 (1992) .................................................................................40
*Monday v. United States*,
   688 F.Supp. 788 (D.Me. 1988)..................................................................20

*Naartex Consulting Corp. v. Watt*,
  722 F.2d 779 (D.C. Cir. 1983).................................................................. 11, 31
*Nat'l Taxpayers Union v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995)...........................................................................10
*Nicolazzo v. United States*,
  786 F.2d 456 (1st Cir. 1986) ........................................................................ 19, 20
*\*Norman v. United States*,
  467 F.3d 773 (D.C. Cir. 2006)........................................................ 24, 38, 44, 45
*Norman v. United States*,
  377 F.Supp.2d 96 (D.D.C. 2005)......................................................................45
*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ...........................................................................................31
*Otto v. National Inst. Of Health*,
  815 F.2d 985 (4th Cir. 1987) ............................................................................21
*\*P & V Enterprises v. U.S. Army Corps of Engineers*,
  516 F.3d 1021 (D.C. Cir. 2008)................................................................... 42, 44
*P&V Enterprises v. U.S. Army Corps of Engineers*,
  466 F. Supp. 2d 134 (D.D.C. 2006) ..................................................................44
*Pace v. DiGuglielmo*,
  544 U.S. 408 (2005) ................................................................................... 47, 50
*Potter v. District of Columbia*,
  558 F.3d 542 (D.C. Cir. 2009)...........................................................................35
*\*Robbins v. United States*,
  624 F.2d 971 (10th Cir. 1980) ..........................................................................25
*Sanchez v. United States*,
  --- F.3d ---, 2014 WL 114273  (1st Cir. January 14, 2014)................................43
*Sebelius v. Auburn Reg'l Med. Ctr.*,
  133 S.Ct. 817 (2013) ................................................................................ 38, 44-45
*Sell v. U.S. Dept. of Justice*,
  585 F.3d 407 (8th Cir. 2009) .............................................................................11
*\*Sexton v. United States*,
  832 F.2d 629 (D.C. Cir. 1987)...................................................... 13, 24, 40, 48
*\*Simpkins v. District of Columbia Government*,
  108 F.3d 366 (D.C. Cir.1997)..................................................................... 39, 44
*Smith v. United States*,
  518 F.Supp.2d 139 (D.D.C. 2007) ........................................................ 38, 41, 44
*Smith–Haynie v. Dist. of Columbia*,
  155 F.3d 575 (D.C. Cir. 1998)...........................................................................48
*\*Spannaus v. U.S. Dep't of Justice*,
  824 F.2d 52 (D.C. Cir. 1987)..................................................................... 42, 44, 46

*United States v. Kubrick,
   444 U.S. 111 (1979) ..................................12-13, 21, 25, 31, 33-35, 37, 40, 42, 48
United States v. Sherwood,
   312 U.S. 584 (1941) ..............................................................................39
United States v. Testan,
   424 U.S. 392 (1976) ..............................................................................39
Winter v. United States,
   244 F.3d 1088 (9th Cir. 2001) ..............................................................18
Wong v. Beebe,
   --- F.3d ---, 2013 WL 5539621 (9th Cir. Oct. 9, 2013) ........................46

**State Cases**
Benn v. United States,
   978 A.2d 1257 (D.C. 2009) ...................................................................37
District of Columbia v. Freeman,
   477 A.2d 713 (D.C. 1984) .....................................................................37
Dyas v. United States,
   376 A.2d 827 (D.C. 1977) .....................................................................37
Girardot v. United States,
   996 A.2d 341 (D.C. 2010) .....................................................................37
Lasley v. Georgetown Univ.,
   688 A.2d 1381 (D.C. 1997) ...................................................................37

**\*Cases chiefly relied upon are marked with an asterisk.**

**Federal Statutes**
28 U.S.C. § 1291 ..........................................................................................2
28 U.S.C. § 1346 ..........................................................................................2
28 U.S.C. § 2401(a) ............................................................... 41, 43, 46, 47
28 U.S.C. § 2401(b) ......................................................2, 3, 9-13, 39-47
28 U.S.C. § 2409a .....................................................................................33
28 U.S.C. § 2501 .............................................................................. 42, 44
28 U.S.C. § 2675(a) ......................................................................... 12, 40
28 U.S.C. § 2679(d)(5).................................................................... 12, 40

**Federal Rules**
Fed. R. Civ. P. 12(b)(1)........................................................... 9, 30, 39
Fed. R. Civ. P. 12(b)(6).................................................................................1
Fed. R. Civ. P. 56 ............................................................................ 29, 36

## <u>GLOSSARY OF ABBREVIATIONS</u>

| | |
|---|---|
| Children's National Medical Center | Children's or Children's Hospital |
| Federal Tort Claims Act | FTCA |
| Hypoxic Ischemic Encephalopathy | H.I.E. |
| National Naval Medical Center | NNMC |
| Pediatric Intensive Care Unit | PICU |

## STATEMENT OF THE ISSUES

1.       Whether L.C.H.'s claim accrued in September 2007 when his parents knew that L.C.H. had suffered a stroke, when medical imaging revealed brain tissue death and softening of the brain, when the parents' knowledge had been contemporaneously recorded in medical records, and when the parents' knew the alleged cause of the injuries.

2.       Whether the District Court acted comfortably within its discretion when it denied jurisdictional discovery when Mr. Hagan failed to proffer any specific factual information or authority that could allow an FTCA limitations period to be restarted.

3.       Whether the District Court was required to consider expert medical opinion testimony prior to determining when appellants' claims' accrued.

4.       Whether, as appellants suggest, all motions to dismiss based on claims being brought outside of the statute of limitations period must be brought under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## JURISDICTIONAL STATEMENT

Appellants, L.C.H. and Mr. Larry Hagan, sought relief pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346 ("FTCA") before the District Court for damages they alleged they sustained as a result of alleged medical negligence. The District Court dismissed appellants' action for lack of subject matter jurisdiction on December 14, 2012, finding that appellants had failed to timely file their administrative claim as required by 28 U.S.C. § 2401(b).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, following Mr. Hagan and L.C.H.'s filing of a timely notice of appeal on February 11, 2013.

## COUNTERSTATEMENT OF THE CASE

This case stems from an unfortunate injury to a five month old child, L.C.H., which Mr. Hagan claims was caused by medical negligence, specifically, a delay by federal medical professionals in treating a twisted and obstructed portion of L.C.H.'s intestine. Mr. Hagan alleges that this delay led to L.C.H. suffering a stroke in September 2007. Medical records show that soon after the stroke, L.C.H. had surgery to remove a large portion of his intestines. Following this surgery he experienced a seizure. A subsequent CT scan and MRI of L.C.H.'s head revealed that L.C.H. had a softening of the brain (i.e. encephalomalacia) and brain tissue death (i.e. infarcts). Mr. Hagan and his then-wife met with medical and social work providers immediately following these events in September 2007. Medical

records indicate that L.C.H. parents understood L.C.H.'s neurological and intestinal injuries at that time.

Appellants Mr. Larry Hagan and his son L.C.H. filed an administrative claim under the Federal Tort Claims Act ("FTCA") with the United States on or about July 23, 2010. Joint Appendix ("JA") 202-15. They filed their complaint on June 6, 2012, alleging jurisdiction under the FTCA because more than six months had passed since they filed their claim. JA 6. On September 24, 2012, the United States moved to dismiss for lack of subject matter jurisdiction because appellants had failed to meet the jurisdictional prerequisite of 28 U.S.C. § 2401(b) of filing an administrative claim within two years from the date the claim accrued. JA 32. On December 14, 2012, the District Court granted the United States' motion to dismiss. R. 21; R. 22. On February 11, 2013, Mr. Hagan and L.C.H. filed their notice of appeal. R. 23. On May 10, 2013, the United States filed a motion for summary affirmance, which was denied by this Court on August 2, 2013.

## STATEMENT OF THE FACTS

L.C.H. had been born prematurely at the National Naval Medical Center ("NNMC") in April 2007. JA 3 ¶16. At birth he had weighed less than two pounds and remained hospitalized for about ten weeks after his birth, in part because he had developed gastrointestinal problems. JA 3-4. Following discharge

and over the next few months, L.C.H. continued to have gastrointestinal difficulties. JA 4-13 ¶¶ 23, 32-38, 42-55.

In September 2007, L.C.H. suffered a stroke following evaluation for a bowel obstruction. JA 16 ¶ 86, 36; *see also* JA 271.[1]  During a visit to DeWitt Army Community Hospital, doctors referred L.C.H. to the emergency department at NNMC.  JA 13 ¶ 56.  At NNMC, a doctor reported a concern about a bowel obstruction.  JA 14 ¶ 64.  L.C.H. was then transferred to Walter Reed for surgical evaluation.  JA 14 ¶ 66.  After being evaluated, L.C.H. was transferred to Children's National Medical Center ("Children's").  During that transfer L.C.H. experienced decreased oxygen saturation, and "[i]t was likely during this period of low oxygen saturation and low blood pressure that L.C.H. experienced a hypoxic ischemic insult, i.e. a stroke."  JA 36 (footnote omitted); *see also* JA 16 ¶ 86; JA 272.

On September 11, 2007, following surgeries at Children's to remove a bowel obstruction and portions of L.C.H.'s bowels, (JA 17-18 ¶¶ 92, 95-99), L.C.H.

---

[1]     The date on which L.C.H.'s permanent injuries occurred was no later than September 2007.  This is undisputed.  *See* Appellants' Administrative Claims, JA 206, JA 213 ("We [Appellant Larry Hagan and his attorneys] have thus ascertained that the permanent injuries from which [L.C.H.] now suffers were caused by the failure to timely diagnose and treat his volvulus in August or September 2007.").  A volvulus is a twisting "of a loop of intestine, causing obstruction. . ." *Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health* (6th ed. 1997).

suffered a seizure, (JA 185; *see also*, JA 272).  A CT scan of L.C.H's brain that same day to diagnose the cause of the seizure revealed "bilateral-parietal occipital infarcts[2] as well as bilateral temporal lobes infarcts."  JA 187; *see also*, JA 272.

L.C.H.'s father immediately began to question the care L.C.H. had received. On September 12, 2007, Mr. Hagan attempted to copy L.C.H.'s bedside charts and records and expressed "the desire to review some of [L.C.H.]'s clinical course over the past 24 hours" with Dr. Catherine Corriveau, the Pediatric Intensive Care Unit ("PICU") Attending at Children's.  JA 188.  Mr. Hagan and his then-wife were briefed by Dr. Corriveau, the Neurology Service, and Social Work about the results of L.C.H.'s neurological tests and scans.  *Id*.  Dr. Corriveau specifically documented that the "parents understand the severity of neurological and intestinal injuries."  JA 188; *see also*, JA 272.  Later, in a September 20, 2007, Social Work note, the provider noted that, "[L.C.H's parents] ask thoughtful questions & have a good understanding of [L.C.H]'s illness-current plan of care," and that the "parents have met w/ Neurology to discuss MRI results."  JA 189.  Mr. Hagan has admitted that he was told of the stroke in September 2007 and that he "knew of the serious state of L.C.H.'s health." JA 54.

---

[2]     An infarct is a "localized area of tissue death caused by an interruption in the blood supply to the area."  *See* Mosby Elsevier, *Mosby's Dictionary of Medicine, Nursing & Health Professions* 960 (8th ed. 2009); *see also*, JA 272.

On September 26, 2007, a Children's doctor recorded on a Consultation Request and Report that L.C.H.'s ". . . head shows stable, right parietal encephalomalacia.[3] CT head (9/11) edema to bilateral and temporal-parietal lobes and hypodensity c/w watershed infarcts." JA 190; *see also*, JA 272. In October 2007, the L.C.H.'s parents "expressed concern about L.C.H.'s neurologic status and the need for repeat CTs and MRIs due to L.C.H.'s earlier stroke in the PICU." JA 193, 194-195; *see also*, JA 273.

L.C.H.'s medical records show that even though that his outward appearance following his stroke was often "normal" or without further apparent complication during pediatric visits, L.C.H. was consistently diagnosed with neurological delays, stroke syndrome, and motor skill developmental delays. L.C.H. continued to be seen by the High Risk Clinic for developmental delays, had a referral for weekly appointments for therapy by the Fairfax County Early Intervention Program,[4] and his parents were aware of the need for further neurologist consultations. *See, e.g.,* JA 75, Medical Records dated December 13, 2007,

---

[3]     Encephalomalacia is the "softening of the brain." *Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health* (6th ed. 1997).

[4]     This organization "provide[s] early intervention services for infants and toddlers under the age of three years who have a developmental delay, atypical development, or a diagnosis which commonly results in developmental delays." Available at http://www.fairfaxcounty.gov/csb/itc/getting-started/ (last visited March, 13, 2014).

-6-

("Problems. . . . DELAYED MILESTONES, visit for: screening mental/developmental disorders . . . STROKE SYNDROME."), JA 77 (referencing history of stroke and past MRI, need to schedule follow-up appointment with neurology); Medical Record, dated January 24, 2008, JA 79-81 (referencing delayed milestones, stroke syndrome, and that visit was for screening for mental and developmental disorders); JA 81 (references need to consult with county for delayed milestones); Medical Records dated February 21, 2008, JA 83 (referencing delayed milestones, and that visit was for screening for mental and developmental disorders); JA 84 (references that L.C.H. was 10 months old but functioning at the 4-6 month level of development of motor skills, that he would benefit from services of, and that he should be seen within 3 months at the "High Risk Clinic"); JA 86 (referencing delayed milestones, stroke syndrome, delay in gross motor skill development, and that visit was for screening for mental and developmental disorders); JA 87 (noting on February 22, 2008, that L.C.H. would be receiving weekly therapy sessions by Fairfax County's Early Intervention program); JA 88 (noting that L.C.H. has stroke syndrome and developmental delays; also notes that L.C.H. has appointment with pediatric neurologist on February 25, 2008, and that repeat MRI will be necessary at some point); Medical Record dated April 10, 2008, JA 90 (delayed milestones, stroke syndrome, delayed gross motor development).

-7-

A February 20, 2009 MRI revealed "extensive areas of gliosis and encephalomalacia." JA 19 ¶ 105.  Hagan stated below that he "did not know of this finding nor understand its impact on L.C.H. until 2010."  JA 59.

## PROCEDURAL HISTORY

Appellants filed written claims with the government around July 23, 2010, seeking $50 million in damages on behalf of L.C.H. and Mr. Hagan, all relating to allegations of negligent care of L.C.H. by doctors at Walter Reed Army Medical Center in August and September 2007.  JA 274; JA 202, JA 209.  According to the administrative claims filed by Hagan and L.C.H., when L.C.H. was diagnosed with hypoxic ischemic encephalopathy ("H.I.E.") around March 2009, "imaging studies in 2009 did not reveal any new lesions when compared with the brain imaging studies performed in September 2007." JA 206, JA 213.  Appellants filed their Complaint with the District Court on June 6, 2012.  JA 6.  The Complaint contained two counts: Count I was titled "Medical Malpractice—Negligence," while Count II was for Appellant Larry Hagan's "services and expenses" for L.C.H.  Appellants sought $50,000,000 in damages.  *See, generally,* Complaint. The District Court dismissed the complaint on December 14, 2012.  This appeal followed.

-8-

## SUMMARY OF THE ARGUMENT

The District Court properly dismissed Mr. Hagan's and L.C.H.'s claims for lack of subject matter jurisdiction and acted well within its discretion in denying their request for discovery. Mr. Hagan claims error in the District Court's opinion dismissing his claims on three related points. First, he argues that the District Court incorrectly determined the date upon which his claim accrued. He suggests that his claim actually accrued only after the specific diagnosis of H.I.E. was given in March 2009, which was less than two years from when he filed his administrative claim, and he suggests that the District Court was required to solicit expert medical testimony prior to identifying the accrual of his claim. Second, he argues that the District Court erred by not permitting him to conduct jurisdictional discovery. Third, Mr. Hagan finds error for the District Court's dismissal under Fed. R. Civ. P. 12(b)(1).

Mr. Hagan is mistaken on each of these points. First, Mr. Hagan failed to comport with the jurisdictional prerequisite of 28 U.S.C. § 2401(b) of filing his administrative claim within two years of claim accrual. Mr. Hagan's claim was untimely because his claim and L.C.H.'s claim accrued in September 2007, and he failed to file his claim on his behalf and L.C.H's behalf until July 2010. Mr. Hagan's argument for delaying accrual of his claim until the specific diagnosis of hypoxic ischemic encephalopathy is unavailing and unsupported by facts and the

precedent he cites.  Second, the District Court acted comfortably within its

discretion when it denied his request for jurisdictional discovery.  Mr. Hagan did

not and could not show that discovery would have altered the date of the accrual of

his claim.  Third, Mr. Hagan's argument that the District Court was required to

solicit medical expert testimony before deciding the United States' motion is raised

here for the first time, is unsupported, and is contrary to precedent.  Finally, Mr.

Hagan's suggestion that statutes of limitation are always non-jurisdictional runs

directly contrary to Supreme Court precedent.  Furthermore, 28 U.S.C. §2401(b) is

a jurisdictional statute of limitations, and therefore equitable tolling is unavailable

under it.  Even were equitable tolling available under 28 U.S.C. §2401(b), Mr.

Hagan has failed to carry his burden to make out a case for it.

## STANDARD OF REVIEW

This Court conducts a *de novo* review of the legal conclusions reached in a

District Court's decision to dismiss a case for lack of subject matter jurisdiction.

*Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 1432 (D.C. Cir. 1995).

This Court has noted that where "the trial court rests not only upon undisputed

[factual] statements, but determines disputed factual issues, we will review its

findings as we would any other district court's factual determinations: accepting

them unless they are 'clearly erroneous.'" *Herbert v. National Academy of

Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Auerbach v. Sverdrup Corp.*,

-10-

829 F.2d 175, 178 (D.C. Cir. 1987)).  "Although the choice of the appropriate rule for determining when a claim accrues is a matter of law, a district court's findings on the application of that rule are findings of fact and will not be disturbed unless clearly erroneous." *Sell v. U.S. Dept. of Justice*, 585 F.3d 407, 409  (8th Cir. 2009) (quoting *Brazzell v. United States*, 788 F.2d 1352, 1355 (8th Cir.1986)).

Although appellants' brief implies that mere error is sufficient for reversal, (*see* Appellant's Brief 33), this Court reviews denials of requests for jurisdictional discovery for an abuse of discretion.  *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147  (D.C. Cir. 1994) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) ("Under the circumstances, we do not see what facts additional discovery could produce that would affect our jurisdictional analysis above and therefore conclude the district court did not abuse its discretion in dismissing the action when it did.")).

## ARGUMENT

## I.  The District Court Correctly Found that Mr. Hagan's Claim Was Untimely Under 28 U.S.C. § 2401(b)

### A.  The District Court Correctly Found That Mr. Hagan's Claim Accrued In September 2007, More Than Two Years Before He Filed His  Administrative Claim, And Therefore His Claim Is Time-Barred

Appellants filed their claim more than two years after it accrued, and it is therefore time-barred, as the District Court correctly found.  *See* 28 U.S.C. §

-11-

2401(b).  The District Court reached this conclusion primarily on undisputed facts. Although Mr. Hagan sought to rely (here and below) on medical records and doctor's notes from months after L.C.H.'s stroke, Mr. Hagan did not and does not contest key facts - that in September 2007, he knew L.C.H. had suffered a stroke and had areas of brain tissue death and that medical records reflected that Mr. Hagan and his then-wife (movant-intervenor Ms. Dana Wilson)  had been informed of severe neurologic injuries and had discussed these issues with medical professionals and a social worker - the same facts which led the District Court to the correct conclusion that Mr. Hagan's claim accrued in September 2007.

        To invoke the FTCA's limited waiver of sovereign immunity, the FTCA requires the filing of an administrative claim with the appropriate federal agency before filing suit. *See* 28 U.S.C. §§ 2675(a), 2679(d)(5). A claim pursuant to the FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . ." 28 U.S.C. § 2401(b).

        The Supreme Court has held that a claim accrues in the medical malpractice context when the claimant knew or should have known of the injury and the cause of the injury.  *United States v. Kubrick*, 444 U.S. 111, 120 (1979).  A claim accrues under the FTCA when the "plaintiff has discovered both his injury and its cause," regardless of whether the plaintiff knows the injury was negligently inflicted. *Id.* at

-12-

120; *see also Sexton v. United States*, 832 F.2d 629, 633 (D.C. Cir. 1987). The

Supreme Court further stated that a plaintiff

> . . . armed with the facts about the harm done to him, can
> protect himself by seeking advice in the medical and
> legal community. To excuse him from promptly doing so
> by postponing the accrual of his claim would undermine
> the purpose of the limitations statute. . . . If he fails to
> bring suit because he is incompetently or mistakenly told
> that he does not have a case, we discern no sound reason
> for visiting the consequences of such error on the
> defendant by delaying the accrual of the claim until the
> plaintiff is otherwise informed or himself determines to
> bring suit, even though more than two years have passed
> from the plaintiff's discovery of the relevant facts about
> injury.

*Kubrick*, 444 U.S. at 123.

Because in September 2007, Mr. Hagan knew of both L.C.H.'s brain injury

and the alleged cause (i.e. the alleged delay in treatment by medical professionals

of an obstructed bowel, (*see* JA 16 ¶¶ 80-86)), appellants' claims accrued no later

than at that time.  In its motion to dismiss, the United States demonstrated that

L.C.H.'s parent's knew about L.C.H's brain injuries no later than September 12,

2007.  On September 11, 2007, L.C.H. suffered a seizure prompting neurological

tests and scans.  JA 185.  Those tests showed that L.C.H. had suffered death of

L.C.H.'s brain tissue (i.e. bilateral-parietal occipital infarcts as well as bilateral

temporal lobes infarcts).  JA 187, JA 190.  These are the same injuries that were

seen in the February 20, 2009 MRI of L.C.H.'s brain.  JA 19 ¶ 105.

-13-

Based on this information, Mr. Hagan started to question the care L.C.H. had received.  On September 12, 2007, he attempted to copy L.C.H.'s bedside charts and records and asked to consult with L.C.H.'s doctors regarding the events of September 11, 2007.  JA 188.  Dr. Corriveau agreed, and along with the Neurology Service and Social Work, she discussed the care and results of L.C.H.'s neurological tests and scans and L.C.H's condition with his parents.  *Id.*  She specifically documented that the "parents understand the severity of neurological and intestinal injuries."  *Id*.

A few weeks later on September 30, 2007, Mr. Hagan again questioned the care L.C.H. was receiving.  He had complained to the nursing staff that there was supposed to be a nurse at the bedside at all times, and Mr. Hagan had a camcorder and was recording every activity on L.C.H.'s bedside.  JA 192.  In October 2007, L.C.H.'s parents specifically expressed concern over the stroke and the CT scan and the need to repeat CT and MRI scans. JA 193-95.

In response, Mr. Hagan offered the District Court an affidavit to address what he knew in September 2007.  *See* JA 146 ¶¶ 9-24. He stated,

> 9.  At some point in the days and weeks after his September 9, 2007 admission to Children's National Medical Center, *the doctor's told me that L.C.H. had suffered a stroke after becoming sicker at Walter Reed.*
>
> 10.  *I understood at that time that L.C.H. was very sick*.

-14-

> 11.  However, *within months of learning about the stroke*, L.C.H.'s doctors and other providers told me and reassured me that L.C.H. had no suffered any complications or long lasting problems as a result of the stroke and/or that he was developing normally. . .

JA 146 ¶¶ 9-11 (emphasis added).  Mr. Hagan admits that he knew L.C.H. suffered a stroke and that it occurred after L.C.H. became more seriously ill while at Walter Reed.  He admits that he understood that L.C.H. was "very sick."  Further, Mr. Hagan's affidavit, by its silence, admitted that he knew of the CT scan showing L.C.H.'s brain injury in September 2007.

Significantly, in his administrative claim he specifically admitted knowing that the CT scan results of L.C.H.'s brain did not change between September 2007 and February 2009.  JA 274 ("According to the administrative claims filed by Hagan and L.C.H., when L.C.H. was diagnosed with hypoxic ischemic encephalopathy around March 2009, 'imaging studies in 2009 did not reveal any new lesions when compared with the brain imaging studies performed in September 2007.'").  Mr. Hagan failed to contest that Dr. Corriveau and others had told him and his wife that L.C.H. suffered severe neurological injuries in September 2007.  Importantly, the affidavit also failed to contest the accuracy of Dr. Corriveau's note on September 12, 2007, the "parents understand the severity of neurological and intestinal injuries."  JA 188.

To the extent that the affidavit attempted to contest any of the facts that establish that the claim accrued in September 2007, it only did so through citing what Mr. Hagan had learned months after he learned all the facts for the claim to accrue. *See* JA 146 (". . . within months of learning about the stroke. . ."). Therefore, because Mr. Hagan failed to dispute that he knew crucial facts for accrual of his claim in September 2007, the District Court correctly concluded that his claims filed in July 2010 were untimely, and Mr. Hagan's case was properly dismissed.

**B.     Mr. Hagan's Argument That His Claim Did Not Accrue Until The Specific Diagnosis Of Hypoxic Ischemic Encephalopathy Was Made Is Unavailing And Is Contradicted By Precedent**

Mr. Hagan argues that, "'Stroke' and 'hypoxic ischemic encephalopathy' are not synonymous," and therefore, his claim did not accrue at the time of L.C.H.'s stroke.   Appellant's Brief  at 19-20.  The legal precedent upon which he relies for attempting to establish this purported distinction cannot bear the weight of his claims.

Mr. Hagan principally relies on the District Court's opinion in *Lewis v. United States*.  Appellant's Brief at 12-13 (citing 290 F.Supp.2d 1 (D.D.C. 2003)). Of course, *Lewis*, as a District Court opinion is not binding on this Court.  *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 431 n.10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not

from the over 40 district court judges . . . each of whom sits alone and renders decisions not binding on the others."). Furthermore, even if this Court were to consider *Lewis'* rationale, it provides no support for Mr. Hagan. *Lewis* involved the treating doctor's uncertainty regarding causation of certain injuries. *Lewis*, 290 F.Supp.2d at 5 (". . . a plaintiff cannot be expected to know the cause of his or her injuries, despite the *uncertainty* of his or her own treating doctors.") (emphasis added). In that case, the District Court noted that "Plaintiff made repeated attempts to gain information from doctors about the cause of [the child's] injuries. Doctors informed her that the cause was "unknown" and no one linked the hemorrhage in the brain with the labor and delivery process, or with any medical treatment provided." *Id*. at 4-5. [5]

Here, on the other hand, Mr. Hagan makes no claim that he was unsure of the cause of L.C.H's stroke or H.I.E. Appellant's Brief at 13. Instead, he merely claims that L.C.H. was not given the specific diagnosis of "HIE until March 2009." *Id*. Furthermore, he explicitly admitted before the District Court that he had routine access to L.C.H.'s medical records in September 2007. JA 146. He also admitted in his administrative claim, that "The pediatric neurologist who diagnosed

---

[5]     Mr. Hagan relies on *Green v. United States*, 180 Fed. Appx. 310, 316 (3d Cir. 2006), for a situation involving an unknown cause to a known injury. Appellant's Brief at 21. This is not the situation in appellants' case. Instead, appellants do not claim that they did not know of the cause of L.C.H.'s injury and claim only that they did not know of the specific diagnosis of H.I.E.

[L.C.H.'s H.I.E.] noted in March 2009 that imaging studies in 2009 did not reveal

any new lesions when compared with the brain imaging studies  performed in

September 2007 after" L.C.H.'s stroke.  JA 213.[6]

    Mr. Hagan did not contest before the District Court that in September 2007,

he knew of L.C.H.'s stroke, the death of brain tissue, the alleged cause of these

injuries, and the September 2007 CT scan showing the injuries which did not

change over time.  Because Mr. Hagan has not stated that he did not know the

cause of L.C.H.'s injuries at the time, *Lewis'* rationale provides no support for

him.[7]

---

[6]    Although Mr. Hagan's brief identifies hospital visits months after L.C.H.'s stroke where he claims that he was told that there was no ill effects from the stroke, these medical records do not support his claims to the extent he urges.  *See, supra* at 6-7 (citing medical records).

[7]    Mr. Hagan also cites the Ninth Circuit's opinion in *Winter v. United States*, 244 F.3d 1088 (9th Cir. 2001), which was cited in *Lewis*.  Appellant's Brief at 12-13.  This case is inapposite because the appellant in *Winter* had been told that the cause of his injury (an infection) was not the medical treatment he had undergone; therefore, the Court determined that the *Kubrick* requirement for claim accrual (i.e. knowing one's injury and its cause) had not been satisfied because although Winter knew of his injury he did not know of its cause.  *Winter*, 244 F.3d at 1090-91.

Likewise, *Burke v. Washington Hospital Center*, 293 F.Supp. 1328 (D.D.C. 1968), and *Jones v. Rogers Memorial Hospital*, 442 F.2d 773 (D.C. Cir. 1971) (per curiam), do not support Mr. Hagan's claim.  In *Burke,* at issue was simply the situation where a piece of medical equipment was left within Burke.  The District Court there held that the claim accrued when the patient knew or should have known of the injury, not when the surgeon closed the patient's wound.  *Burke*, 293 F.Supp. at 1333-34. *Rogers Memorial Hospital* was simply an application of the

Similarly, Mr. Hagan's reliance on *Nicolazzo v. United States* is misplaced to the extent that he claims, (*see* Appellant's Brief at 11-12), that the case stands for the proposition that a particular diagnosis is necessary for a claim to accrue. *See* 786 F.2d 454, 456 (1st Cir. 1986).   In *Nicolazzo*, appellant's medical malpractice claim did not accrue until he had been correctly diagnosed where the underlying claim alleged a delay in diagnosis as the basis for the claim.  There, appellant's medical malpractice claim was based on his doctor's incorrect diagnosis that his ear problems were a lasting result of a helicopter crash, which appellant could not have known was incorrect until he was later correctly diagnosed as having a chronic infection and tumor.  *Nicolazzo,*  786 F.2d at 456. In other words, in Nicolazzo's case "the factual predicate for his medical malpractice claim could not have become apparent to him before receiving a correct diagnosis in 1980. The initial cause of the problem was apparently the helicopter crash," but it was not apparent until he later received a correct diagnosis that the actual factual predicate for his claim was medical misdiagnosis.  *Id*.

Here, Mr. Hagan has not alleged that the diagnosis of a stroke was improper or that a delay in diagnosing the stroke led to L.C.H.'s H.I.E.  Instead, he claims the United States' employees "did not timely and appropriately evaluate, analyze,

---

discovery rule, where this Court found that a claim did not accrue until the putative plaintiff "knew, or through the exercise of reasonable diligence should have known, of the facts giving rise to his claim." *Rogers Memorial Hospital*, 442 F.2d at 774-75.  Here, the crucial facts were all known to Mr. Hagan in September 2007.

diagnose and treat L.C.H.'s bowel obstruction. . . [and as a result] . . .L.C.H. suffered severe and permanent neurologic injuries." JA 19-20 ¶¶ 111-12. Therefore, *Nicolazzo* provides no support for Mr. Hagan's allegation of error.

Mr. Hagan also relies on an out of circuit District Court opinion in *Monday* for the proposition that L.C.H.'s claim accrued only with the diagnosis of permanent injury. *See* Appellant's Brief at 18-19 (citing *Monday v. United States*, 688 F.Supp. 788, 790 (D.Me. 1988)). The District Court there determined that the claim at issue in *Monday* did not accrue during the child's birth when he apparently suffered a brain injury, because the parents were only on notice that the child had inhaled meconium and was under respiratory distress. *Monday*, 688 F.Supp. at 790. The record before the court in *Monday* did not show that the parents were on notice that those birth issues revealed the "risk of permanent injury" before the neurological exam 10 months after the child's birth in that case. *Monday*, 688 F.Supp. at 791. Here, Mr. Hagan knew of seizures, stroke, and brain tissue death, and had a CT scan and an MRI in September 2007 showing the full extent of L.C.H.'s brain injury, which did not change between injury and his later diagnosis of H.I.E. in March 2009. Thus, *Monday* is plainly distinguishable.

Mr. Hagan also relies on the Fourth Circuit's opinion in *Kerstetter*. *See* Appellant's Brief at 20-21 (citing *Kerstetter v. United States*, 57 F.3d 362 (4th Cir. 1995)). That case, however, refutes his claim regarding the timing of accrual more

than supports it.  Contrary to his argument, *Kerstetter* reinforces the *Kubrick* standard that a claim accrues when the injured party knows of his injury and its cause.  *Kerstetter*, 57 F.3d at 366 ("Because the Kerstetters became aware of the two facts critical for purposes of claim-accrual-that Elizabeth had been injured, and that the surgery caused her injury . . .  the district court correctly determined that the FTCA statute of limitations barred all of the Kerstetters' claims . . .").

The only significance that the permanent nature of the injury had in that case was that it put the plaintiff on notice that the child was injured by the surgery (as opposed to some other cause) and that the renal failure was not a temporary side effect of the surgery.  *Id*. ("[T]he Kerstetters did not become aware of Elizabeth's injury until, in late June or early July 1987, they learned that her kidney failure was permanent.").  Here, Mr. Hagan did not dispute before the District Court that he knew key facts that demonstrated a permanent brain injury (e.g., brain tissue death).

Appellants' reliance on *Otto v. National Inst. Of Health*, 815 F.2d 985 (4th Cir. 1987), is similarly misplaced.  *See* Appellant's Brief at 21.  In a case involving a doctrine inapplicable here (the continuous treatment doctrine), the Fourth Circuit, recognizing the "unique set of facts" that confronted it, stated that until Otto's symptoms were determined to be a lasting result of the initial surgery, her claim did not accrue.  *Otto*, 815 F.2d at 989.  Here, Mr. Hagan knew L.C.H.'s injury was

a brain injury resulting from deprivation of oxygen and that it occurred during the transportation to Children's in September 2007. This information allowed him to discern the injury and its cause immediately, and there is no indication that he was provided a faulty explanation of what occurred at the time of the incident in September 2007. In fact, he submitted an affidavit to the District Court in which he failed to address at all what the medical records reflected, i.e. that at the time in September 2007 L.C.H. was sadly diagnosed with a significant brain injury and that his parents discussed this with L.C.H.'s doctors and social worker, and the medical records reflect that they understood. *See* JA 188 ("Parents understand the severity of his neurologic and intestinal injuries.").

Similarly, Mr. Hagan's reliance on *Johnson v. United States*, 2005 U.S. Dist. LEXIS 13231 (W.D. Tex, June 30, 2005), is also misplaced because *Johnson* refutes Mr. Hagan's own arguments regarding the timing of accrual. *See id.* at * 67 (". . . [B]elief that an injury is only temporary is irrelevant with regard to the time of claim accrual. '[A] plaintiff need not realize or appreciate the full extent of his or her injury . . . as the statute runs even though the eventual damage [from an injury] is uncertain, incalculable or unknown.'"). To the extent that Mr. Hagan seeks to rely on Circuit cases cited in *Johnson*, those cases also fail to support his challenge to the District Court's decision here. *See* Appellant's Brief at 23 (citing *Colleen v. United States*, 842 F.2d 329, 330-31 (9th Cir. 1988); *Jastremski v.*

*United States*, 737 F.2d 666, 668 (7th Cir. 1984). Specifically, these cases

addressed the situation where there was no evidence of a brain injury, which as

discussed above, is not the case here.

    In considering a more appropriate analogous case, the District Court

concluded, "This case is similar to *T.L. ex rel. Ingram v. United States*, a case that

found a claim under the FTCA accrued when the parent was informed of a brain

injury at birth and not later with the discovery of problems arising from the brain

injury. 443 F.3d 956 (8th Cir. 2006)." JA 279. In *Ingram*, doctors informed a

mother that her daughter had brain damage just after her birth. *Ingram*, 443 F.3d at

962. Only later did the mother learn that her daughter had cerebral palsy. The

Eighth Circuit found there that

> accrual of a claim based on brain injury at birth is not
> tolled merely because the injury worsens and develops
> into cerebral palsy. Ingram had a duty under law to seek
> advice about possible legal action at the time she knew of
> T.L.'s brain injury, not only after the full effects of the
> brain damage were manifested.

*Id*. at 962-63. Just as in this case, doctors in *Ingram* noted the child's development

within normal limits, which Ingram argued meant her claim could not have accrued

earlier. In rejecting this argument the Eighth Circuit stated: "[W]e cannot agree

that conflicting or inaccurate diagnoses are sufficient to toll the statute of

limitations, for it would be impractical to conclude that the limitations period stops

and starts depending on the diagnosis of each doctor who examines a patient after the occurrence of an injury." *Id*. at 963.

This Court has cited *Ingram* approvingly for its discussion of claim accrual and equitable tolling.  *See Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (citing *Ingram*, 443 F.3d at 964).  Moreover, *Ingram* is consistent with this Court's opinion in *Sexton v. United States*, 832 F.2d 629, 633 (D.C. Cir. 1987).  In *Sexton*, in considering whether an appellant had sufficient knowledge regarding the *cause* of their child's injury (there, death) for their claim to accrue, this Court said, "Even where the government agents' negligence takes the form of omission, a plaintiff's understanding of the basic nature of the treatment should suffice to begin the statute running. If the plaintiff knows these critical facts, he need only undertake a reasonably diligent investigation to determine whether a cause of action may lie."  *Sexton*, 832 F.2d 633.  Here, although the issue is Mr. Hagan's knowledge of L.C.H.'s injury, the same rationale holds.  In other words, his "understanding of the basic nature of the [injury] should suffice to begin the statute running. If the plaintiff knows these critical facts, he need only undertake a reasonably diligent investigation to determine whether a cause of action may lie." Here, as discussed, Mr. Hagan knew of L.C.H.'s brain injury in September 2007. Even if he did not know the specific diagnosis of H.I.E., his basic knowledge of the type of injury was sufficient for his claim to accrue.

-24-

This is likewise analogous to the Tenth Circuit's holding in *Robbins v. United States*, 624 F.2d 971 (10th Cir. 1980). There, the Tenth Circuit considered the situation of a child who developed marks on the skin of his thigh, back, and groin due to an improperly prescribed medicine. *Robbins*, 624 F.2d at 972. Robins sought to establish that his claim accrued no more than two years from the time he filed his administrative claim. *Id.* He and his parents were originally told that the skin marks may or may not go away with time. *Id.* Later, however, he learned that the injury was permanent. *Id.* at 973. Robbins argued that his claim should not have accrued until his injury from the improperly prescribed medicine was diagnosed as being permanent. *Id.* The Tenth Circuit rejected this claim and found that it was time barred, noting, "Robbins was well aware of the injury and its cause shortly after it occurred. That he might have then believed the injury was only temporary is irrelevant." *Id.* L.C.H.'s situation is analogous in that even if Mr. Hagan believed that the injury to L.C.H. would not be permanent, he clearly knew soon after L.C.H.'s stroke of the significant injuries. Therefore, his claim accrued at that time and not at some later time due to a change in diagnosis. *See, also*, *Gustavon v. United States*, 655 F.2d 1034, 1036 (10th Cir. 1981 ("Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute."); *Manko v. United States*, 830 F.2d 831, 842 (8th Cir. 1987) ("The language of § 2401(b) and the logic of United States v. Kubrick simply do not

-25-

admit the distinction between temporary and permanent injury that Mrs. Manko presses.").

### C.   Mr. Hagan Overstates the "Assurances" He Claims To Have Been Given "Months After" September 2007

Mr. Hagan repeatedly states that he was reassured that there were no long term consequences of L.C.H.'s stroke.  *See*, *e.g.*, Appellant's Brief at 25 ("Tests and follow-up appointments with L.C.H. after his stroke determined no abnormalities, and Mr. Hagan was consistently reassured that L.C.H. would not suffer long-term effects from the stroke.")  This is simply inaccurate on both accounts.  First, tests in September 2007 after L.C.H.'s stroke clearly revealed a significant brain injury.  On September 26, 2007, a Children's Hospital doctor recorded on a Consultation Request and Report that, "…head shows stable, right parietal *encephalomalacia*.  CT head (9/11) edema to bilateral and temporal-parietal lobes and hypodensity c/w watershed infarcts." (emphasis added).  JA 190.  Aside from these medical records demonstrating a significant brain injury, including softening of the brain (i.e. encephalomalacia) and tissue death (i.e. infarct), Mr. Hagan also admitted in his complaint that "encephalomalacia" is a sign of brain injury, (JA 19 ¶ 106.  ("Both gliosis and encephalomalacia are signs of brain injury.")); therefore, he has acknowledged that this specific diagnosis of

-26-

"encephalomalacia" indicates a brain injury.[8]

Second, L.C.H. was consistently recognized as having issues potentially related to a brain injury in his medical visits following his stroke, even in the months after September 2007, which Mr. Hagan emphasizes. However, these records show that even though his outward appearance following his stroke was often outwardly "normal" or without further apparent complication during pediatric visits, L.C.H. was consistently diagnosed with neurological delays, stroke syndrome, motor skill developmental delays, continued to be seen by the High Risk Clinic for developmental delays, had a referral for weekly appointments for therapy by the Fairfax County Early Intervention Program, and was aware of the need to consult with neurologists about L.C.H. *See, supra* at 6-7 (citing medical records). Ultimately, contrary to Mr. Hagan's suggestion, the medical records and L.C.H.'s medical appointments gave no indication that L.C.H.'s development was fully normal. Indeed, even had those records indicated normal development during some medical visits, this does not change the timing of the accrual of appellants' claims because Mr. Hagan was on notice of L.C.H.'s brain injury in September

---

[8]     Mr. Hagan seeks to distance himself from knowledge of the use of the word "encephalomalacia" in the Complaint or its meaning, (*see* Appellant's Brief at 27-28); this distancing, however, is immaterial because the fact remains that in his Complaint he acknowledges that encephalomalacia is a brain injury. *See* JA 19 ¶ 106. Further, it is undisputed that L.C.H.'s medical records reflected that imaging of L.C.H.'s brain reflected encephalomalacia in September 2007. Appellant's Brief at 28.

2007.

## II.    The District Court Acted Comfortably Within Its Discretion By Denying Appellants' General Request For Discovery

The District Court did not abuse its discretion by not requiring jurisdictional discovery.  *See Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006) (denial of a Rule 56(f) [now Rule 56(d)] request for discovery is reviewed for abuse of discretion).  Although Mr. Hagan generally states in his brief that the District Court should have granted jurisdictional discovery, (Appellant's Brief at 33-41), he requested jurisdictional discovery only generally, and he failed to identify specific facts which would have altered the District Court's conclusions regarding claim accrual and equitable tolling.

"To obtain [Rule 56(d) ] relief, the movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary." *Cannon v. District of Columbia,* 717 F. 3d 200, 208 (D.C. Cir. 2013) (citing *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012)). The affidavit "must outline the particular facts [the movant] intends to discover and describe why those facts are necessary to the litigation." *Id.*

Here, Mr. Hagan failed to make an adequate showing of a need for jurisdictional discovery to the District Court.  First, Mr. Hagan's request was general and failed to identify facts that would alter the accrual of his claim.  *See e.g.* JA 47("Should this Court require additional evidence, Defendant's motion

-28-

constitutes a factual challenge to the timeliness of this claim. Plaintiffs are therefore entitled to conduct discovery. . .”);  JA 68 (“Should this Court find that more evidence is needed, Plaintiffs are entitled to conduct further discovery to prove the timeliness of their claim.”).  Although Mr. Hagan's counsel submitted a Rule 56(d) affidavit, this was done in the context of the above general language.  In order for the District Court to have any need to consider Appellants' request for discovery, it would first have to have determined that additional information was needed.  It did not.  JA 278 (“Hagan, who has the burden to establish jurisdiction, submitted an affidavit that neglected to offer any rebuttal to why these records and their findings should not start the accrual clock in September 2007.”)  Because Appellant failed to contest the key facts, including Dr. Corriveau's entry in the medical records that in September 2007, the “parents understand the severity of neurological and intestinal injuries,” (JA 188), and in the absence of any propounded facts that would alter the date of claim accrual, the District Court did not abuse its discretion in not awarding Appellants' jurisdictional discovery.

Furthermore, Mr. Hagan appears to conflate two separate concepts in his brief when he states “In going beyond the pleadings in support of its Motion to Dismiss, the USA made a factual challenge to the Hagan's Complaint. Given the factual challenge, the district court erred by failing to go beyond the pleadings in this matter and to consider outside evidence in determining whether this claim was

-29-

timely filed." Appellant's Brief, p. 33. Mr. Hagan misunderstands the distinction between what matters and evidence a district court *may* rely on in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, on the one hand, and when a district court *must* order discovery, on the other.

Here, contrary to Mr. Hagan's claims, it is clear that the District Court properly considered matters outside of the pleadings submitted by both parties. *See, e.g.,* JA 278 ("Hagan, who has the burden to establish jurisdiction, submitted an affidavit that neglected to offer any rebuttal to why these records and their findings should not start the accrual clock in September 2007."). In all, Mr. Hagan submitted twenty (20) exhibits, including medical records and his affidavit, in an attempt to carry his burden to establish the District Court's jurisdiction. *See* R. 14-1. The District Court's Memorandum Opinion demonstrated that it considered the materials that Mr. Hagan had submitted, including his affidavit, as well as the documents submitted by the United States. *See* JA 272-74; 278-79, 281 (citing to R. 14 (documents submitted by Mr. Hagan) and R. 18 (redacted version of documents submitted by the United States)). With respect to a factual challenge to jurisdiction, the district court may consider materials outside of the pleadings to determine whether it has subject matter jurisdiction over the claims. *Jerome Stevens Pharmacy, Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Herbert v.*

*Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). Here, it is clear that Mr. Hagan knew he could submit materials beyond the complaint to support his claim of the District Court's jurisdiction, that he did so, and that the District Court did in fact properly consider those materials.

On the other hand, jurisdictional discovery, like any discovery, is a mechanism for identifying evidence. It is generally true that the "Federal Rules of Civil Procedure generally provide for liberal discovery to establish jurisdictional facts." *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n.13 (1978); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983). The need in any particular case and the scope of discovery lie within the district court's broad discretion. *Naartex*, 722 F.2d at 788; *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994).

Although Mr. Hagan cites *Ignatiev v. United States*, 238 F.3d 464 (D.C. Cir. 2001), for the proposition that ". . .plaintiffs [should] be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion," (Appellant's Brief at 36 (citing *Ignatiev*)), that case is not pertinent here. This is so because, unlike the plaintiff in *Ignatiev*, Mr. Hagan identified no information that he was lacking that would affect the District Court's jurisdiction. What Mr. Hagan knew or should have known is the relevant inquiry for claim accrual. *See Kubrick*, 444 U.S. at 120.

-31-

In *Ignatiev,* the appellants lacked access to internal guidelines of the Secret Service, from which the Secret Service claimed the benefit of the FTCA's discretionary function exception. *Ignatiev,* 238 F.3d at 467. It was this lack of access, that dictated this Court's resolution of that issue. Here, Mr. Hagan has failed to identify a similar lack of information. On the contrary, Mr. Hagan had all the facts necessary for his claim to accrue.

This Court has held that the District Court does not abuse its discretion to deny jurisdictional discovery when a plaintiff has failed to identify facts for discovery that would alter the jurisdictional analysis. *Cheyenne Arapaho Tribes of Oklahoma v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009). In *Cheyenne Arapaho Tribes*, this Court considered jurisdictional discovery in the context of claim accrual for statute of limitations purposes (albeit under The Quiet Title Act, 28 U.S.C. § 2409a). *Id*. There, like here, the appellant challenged a denial of jurisdictional discovery where appellants believed jurisdictional discovery of facts occurring *after the claim accrued* was necessary to help them establish a later date of claim accrual to save their claims. This Court affirmed the District Court's decision to deny jurisdictional discovery finding that potential later factual developments did not alter when the claim accrued. *Id*. at 596-97 ("[T]he Tribes should have known of the government's adverse claim, and the statute of limitations began to run. Any additional information or documentation regarding

-32-

partial military uses, or suggestion that the land might be used for future military purposes, would not change the court's jurisdictional analysis.).

Similarly here, Mr. Hagan did not seek jurisdictional discovery of facts that would have affected when his claim accrued or when the statute of limitations ran. As noted in his brief, Mr. Hagan intended to take discovery of events that occurred after his claim had already accrued in September 2007. *See* Appellant's Brief at 37-39 (identifying doctors and nurses who treated L.C.H. in the months and years following L.C.H.'s stroke and diagnosis of a brain injury September 2007). As Mr. Hagan's claim would have already accrued, after the fact discovery would serve no meaningful purpose because a claim accrues in the medical malpractice context when the claimant knew or should have known of the injury and the cause of the injury. *Kubrick*, 444 U.S. at 120.

The relevant inquiry, then and now, is what Mr. Hagan knew or should have known in regards to L.C.H.'s injury and its cause. Because what Mr. Hagan knew is completely within his control, the District Court correctly found that he failed to carry his burden to establish the Court's jurisdiction,

> Hagan knew his child had a stroke in September 2007. (Dkt. No. 14, at 8). Medical records indicate brain tissue death in September 2007. (*See* Dkt. No. 18 at A15). Medical records also indicate that Hagan and his wife were told of severe neurological injuries in September 2007. (*Id.* at A13). And medical records indicate concerns expressed by Hagan and his wife about L.C.H.'s neurological health. (*Id.* at A18). Hagan, who

> has the burden to establish jurisdiction, submitted an
> affidavit that neglected to offer any rebuttal to why these
> records and their findings should not start the accrual
> clock in September 2007.

JA 278.  The various observations of medical professionals following the accrual

of the claim is simply not relevant to the timing of the accrual of the claim.

Mr. Hagan also argued for discovery stating he was "entitled to conduct

discovery as to whether [statements made by L.C.H.'s treating physicians after

September 2007 were] made in furtherance of delaying – or altogether avoiding –

the filing of a claim by lulling Mr. Hagan into a false sense of security until such

time as the statute of limitations had run."  Appellant's Brief at 39.  Aside from

looking for such a conspiracy, Mr. Hagan overlooks the fact that failed to offer the

District Court "any rebuttal to why these records and their findings should not start

the accrual clock in September 2007." *See, generally*, Appellant's Brief; JA 278.

These facts are central to the timing of claim accrual (e.g., that L.C.H.'s parents

were told of L.C.H.'s stroke and neurological injuries, that they knew that the

stroke likely occurred during transport to Children's Hospital, knew of the

September 2007 CT scan results, and that at the time they "[understood] the

severity of neurological and intestinal injuries."  JA 278.).  Under *Kubrick*, this

knowledge of L.C.H.'s injury and its cause is what sets the accrual of Appellant's

claim, even if the statute of limitations were not jurisdictional.   Appellants later

-34-

averments of what happened months after learning of the stroke are not germane here.

### III. Mr. Hagan Proffers No Authority for Requiring the District Court to Solicit Additional Expert Evidence Prior to Dismissing a Medical Malpractice Case for Lack of Jurisdiction

Mr. Hagan would add a new requirement for determining when a claim accrues, namely, that expert medical testimony is necessary to establish when a claim accrues. Appellants' novel argument is not based in identifiable precedent and is unnecessary for courts to apply the *Kubrick* standard. Nor, importantly, did Appellants proffer such expert testimony or make this claim in the District Court. Mr. Hagan argues,

> [The District Court] should have deferred any decision as to timeliness until medical opinion testimony was permitted about the very crucial distinction between an event that can ultimately but not necessarily cause hypoxic ischemic encephalopathy, and the condition that is hypoxic ischemic encephalopathy. Clearly such a distinction lies outside the knowledge of the average layperson and calls . . . for knowledge of complex scientific information.

Appellant's Brief at 41-42. This claim is without merit. First, Mr. Hagan did not request expert testimony to be part of any jurisdictional discovery, and therefore, this issue is waived before this Court. *See Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir.2009). In the Rule 56(d) affidavit attached to his opposition, Mr. Hagan identified factual information, but did not request expert testimony.

-35-

*See* R.14 at 19 ("Plaintiffs' Rule 56(d) affidavit delineates those witnesses from whom additional information is needed in order to provide this Honorable Court with *facts* that will affect this Court's analysis not only as it pertains to accrual under a discovery rule but also as it pertains to equitable tolling."(emphasis added)); JA 149-53 (claiming that each of the medical professionals listed were needed for information that they relayed to Mr. Hagan).

Second, Mr. Hagan was well aware that he could present matters before the District Court to aid in its determination regarding the accrual of his claim.  He chose not to submit any expert opinion on this topic or to request additional time to oppose the United States' motion to dismiss so that he could obtain such an opinion.  Indeed, Mr. Hagan did submit medical records and an affidavit to support his position that jurisdiction was proper.  *See, generally*, R. 14-1.

Finally, Mr. Hagan identifies no authority to support his contention that a medical expert was needed in this case.  Although he cites to cases from the District of Columbia Court of Appeals, (*see* Appellant's Brief at 42 (citing *Dyas v. United States*, 376 A.2d 827, 832 (D.C. 1977)); *Girardot v. United States*, 996 A.2d 341, 342 n. 2 (D.C. 2010); *Benn v. United States*, 978 A.2d 1257, 1269 (D.C. 2009); *District of Columbia v. Freeman*, 477 A.2d 713 (D.C. 1984); *Lasley v. Georgetown Univ.*, 688 A.2d 1381 (D.C. 1997)), and this Circuit, (*see id.* at 43 (citing *Canterbury v. Spence*, 464 F.2d 772, 792 (D.C. Cir. 1972)), he cites the

cases relying only for the general proposition that expert testimony may be helpful and required for a plaintiff to prove his or her case.  As a general proposition, Mr. Hagan has provided no reason to require a District Court to require expert medical witness testimony prior to ruling on a motion to dismiss.  Moreover, in this specific case, such testimony was unnecessary to the District Court's conclusion.  Its conclusion rested on the fact that Mr. Hagan had failed to rebut the evidence which showed that he was aware of sufficient facts to cause his claim to accrue in September 2007.  Expert testimony was unnecessary for this determination.  This is fully consistent with the Supreme Court's *Kubrick* decision.

Accrual of a plaintiff's claim hinges on the facts known to the putative plaintiff, not on an expert's opinion.  *See Kubrick*, 444 U.S. at 123-24 ("A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute. . .").  Here, Mr. Hagan was armed with the necessary facts in September 2007 for his claim to accrue, and he has identified no specific grounds or authority for medical expertise being necessary before the District Court could make its determination on the United States' motion.

-37-

**IV.    The District Court Correctly Dismissed Mr. Hagan's Claims Under Rule 12(b)(1) Because He Failed to Carry His Burden to Establish the Court's Jurisdiction**

The District Court properly dismissed Mr. Hagan's case pursuant Fed. R. Civ. P. 12(b)(1) because he failed to establish the Court's jurisdiction. In alleging error on the part of the District Court for dismissing the case pursuant to Rule 12(b)(1), Mr. Hagan primarily relied upon a District Court opinion, *Smith v. United States*, 518 F.Supp.2d. 139 (D.D.C. 2007), to argue that statutes of limitation, *in general*, are not jurisdictional.  Mr. Hagan's reliance on this case is misplaced. Clearly, a decision of the District Court is not binding on this Court. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 431 n.10 (1996). Even were Mr. Hagan's arguments invoking *Smith* to be considered, they remain unpersuasive as the District Court correctly found that the holding in *Smith* was contrary to D.C. Circuit case law and Supreme Court case law. Further the cases Mr. Hagan cites that could be binding on this Court, (*see* Appellant's Brief at 56 (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S.Ct. 817 (2013); *Norman v. United States*, 467 F.3d 773 (D.C. Cir. 2006), in no way stand for the proposition that the District Court erred in deciding this case under Rule 12(b)(1).   Finally, it is noteworthy that Mr. Hagan makes no argument that 28 U.S.C. §2401(b), in particular, is a non-jurisdictional statute of limitations, and instead solely relies on the argument that

statutes of limitation, in general, are not jurisdictional.  This argument overlooks

settled Supreme Court precedent to the contrary.

### A.    The District Court Properly Considered the United States' Motion to Dismiss Under Rule 12(b)(1)

The District Court properly considered the United States' Motion to Dismiss

as a motion under Rule 12(b)(1), and Mr. Hagan's cited authority does not

establish otherwise.   It is a settled principal of federal law that, as sovereign, the

United States is absolutely immune from suit and, unless Congress has consented

to such cause of action, there is no jurisdiction in any court to entertain such a

claim against the United States.  *United States v. Testan*, 424 U.S. 392 (1976);

*United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as

sovereign, is immune from suit save as it consents to be sued and the terms of its

consent to be sued in any court define that court's jurisdiction to entertain the

suit.").

The FTCA's limited waiver of the United States' sovereign immunity for

certain torts of Federal employees, which are committed within the scope of their

employment requires that claimants meet the jurisdictional prerequisite of filing an

administrative claim with the appropriate agency before filing suit in district court.

*See* 28 U.S.C. §§ 2675(a), 2679(d)(5); *Simpkins v. District of Columbia*

*Government*, 108 F.3d 366, 371 (D.C. Cir.1997) (administrative claim requirement

is a jurisdictional requirement to suit under the FTCA).  When a statute specifically

-39-

requires exhaustion of administrative remedies prior to bringing a judicial action,

then exhaustion is mandatory.  *McCarthy v. Madigan*, 503 U.S. 140 (1992).

One of the jurisdictional prerequisites to filing suit under the FTCA is

meeting the statute of limitations. Title 28 U.S.C. § 2401(b) provides,

> A tort claim against the United States shall be forever
> barred unless it is presented in writing to the appropriate
> Federal agency within two years after such claim accrues
> or unless action is begun within six months after the date
> of mailing, by certified or registered mail, of notice a
> final denial of the claim by the agency to which it was
> presented.

"Statutes of limitations…represent a pervasive legislative judgment that it is unjust

to fail to put the adversary on notice to defend within a specified period of time

and that "the right to be free of stale claims in time comes to prevail over the right

to prosecute them." *Kubrick*, 444 U.S. at 117.  "Section 2401(b)…is the balance

struck by Congress in the context of tort claims against the Government; and we

are not free to construe it so as to defeat its obvious purpose, which is to encourage

the prompt presentation of claims."  *Id.* at 117.  Moreover, as § 2401(b) imposes a

condition on the United States' limited waiver of sovereign immunity, courts

"should not take it upon [themselves] to extend the waiver beyond that which

Congress intended." *Id.* at 117-18; *see also Sexton v. United States*, 832 F.2d 629,

633 (D.C. Cir. 1987).

-40-

In the present case, appellants relied on the District Court case *Smith v. Unites States*, for the proposition that the FTCA's statute of limitations is not jurisdictional.  *See* 518 F.Supp.2d 139, 147 (D.D.C. 2007).  The problem with *Smith* is that it conflicts with later decisions of this Court and the Supreme Court. In holding that 28 U.S.C. §2401(b) was non-jurisdictional, *Smith* relied upon the mistaken tenet that statutes of limitation are *generally* non-jurisdictional and that other similar statutes of limitation, such as 28 U.S.C. § 2401(a) and 28 U.S.C. § 2501, were not jurisdictional.  *Smith*, 518 F.Supp.2d at 147 ("'[a] statute of limitations defense ... is not 'jurisdictional'  in nature" (citations omitted)) and 147 n.6).  As the District Court correctly found here, however, these rationales for *Smith* are not valid.

The Supreme Court in *John R. Sand & Gravel Co. v. United States* found that Federal statutes of limitation that are a condition on the waiver of sovereign immunity or facilitate the administration of claims are jurisdictional.  *See John R. Sand & Gravel Co.*, 552 U.S. 130, 133 (2008).  Specifically, the Supreme Court found that 28 U.S.C. § 2501 was jurisdictional, thereby directly undermining *Smith's* assumptions that statutes of limitation generally are non-jurisdictional and that specifically 28 U.S.C. § 2501 is not jurisdictional.  *See John R. Sand & Gravel Co.*, 552 U.S. at 134.  Furthermore, the Supreme Court has explained, in interpreting the FTCA's two-year time bar, the FTCA "waives the immunity of the

United States" and "in construing the statute of limitations, which is a condition of that waiver" courts "should not take it upon [them]selves to extend the waiver beyond that which Congress intended." *Kubrick*, 444 U.S. at 117-18. Therefore, the FTCA's statute of limitations falls squarely into the camp of "jurisdictional" statutes of limitations that the Supreme Court referenced in *John R. Sand & Gravel*.

Similarly, it is the clear and well-settled precedent of this Court that 28 U.S.C. §2401(a) is a jurisdictional statute of limitations. *See P & V Enterprises v. U.S. Army Corps of Engineers*, 516 F.3d 1021, 1026 (D.C. Cir. 2008) ("The court has long held that section 2401(a) creates 'a jurisdictional condition attached to the government's waiver of sovereign immunity.'" (citations omitted)); *see also*, *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987) ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity.") In light of *John R. Sand & Gravel* and *P & V Enterprises*, *Smith*'s assumption that the United States' statutes of limitations are generally non-jurisdictional is unsupported and is non-precedential in any event.

In dismissing Appellant's case for lack of subject matter jurisdiction, the District Court noted that this Court has not ruled specifically on whether 28 U.S.C. § 2401(b) is jurisdictional but found the Supreme Court's holding in *John R. Sand*

-42-

*& Gravel Co.* and the wording of the statute clear. *See In re Swine Flu*

*Immunization Prods. Liability Litig.*, 880 F.2d 1439, 1442 (D.C. Cir 1989)

(assuming without deciding that 28 U.S.C. § 2401(b) is jurisdictional).[9] Also, as

discussed above, Circuit precedent is otherwise well-settled and clear. The District

Court correctly found that, "[t]he language of the statute itself, combined with

recent Supreme Court and Circuit Court precedent, indicates that the FTCA's

statute of limitations should be considered a jurisdictional bar to a claim." JA 276.

As the District Court noted, "The language found jurisdictional in *John R.*

*Sand*, 'shall be barred,' is the same language used in 28 U.S.C. § 2401(a)." JA 276.

In fact, the language found in 28 U.S.C. § 2401(b) is even more absolute. 28

U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred

unless it is presented in writing to the appropriate Federal agency within two years

. . ."). The use of the additional word "forever" in 28 U.S.C. § 2401(b) makes the

statute even less susceptible to being read as non-jurisdictional or to be read to

---

[9]     The weight of authority amongst the Circuits that have considered the issue
supports the conclusion that 28 U.S.C. § 2401(b) is a jurisdictional statute of
limitation. *See, e.g., Sanchez v. United States*, --- F.3d ---, 2014 WL 114273 *6
(1st Cir. January 14, 2014); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d
210, 214 (2d Cir. 1987); *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278
(4th Cir. 2000); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.,* 646 F.3d
185, 189 (5th Cir. 2011); *T.L ex rel. Ingram v. United States*, 443 F.3d 956, 961
(8th Cir. 2006); *Hart v. Dep't of Labor*, 116 F.3d 1338, 1339 (10th Cir. 1997);
*Dalrymple v. United States*, 460 F.3d 1318,  324-26 (11th Cir. 2006); *but see*
*Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001); *Arteaga v. United*
*States*, 711 F.3d 828, 833 (7th Cir. 2013); *June v. United States*, --- Fed. Appx. ---,
2013 WL 6773664 (9th Cir. Dec. 24, 2013).

allow for equitable tolling. *Compare* 28 U.S.C. § 2501 ("shall be barred") *with* 28 U.S.C. § 2401(b) ("shall be forever barred").

Furthermore, the case law of this Circuit is clear. This Court has held that the administrative claim requirement of the FTCA is a jurisdictional requirement. *Simpkins*, 108 F.3d at 371. Additionally, concerning the statute of limitations regarding this administrative claim, this Court has consistently found the less absolute language of 28 U.S.C. §2401(a) sufficient to establish that it is a jurisdictional statute of limitations. *See P & V Enterprises*, 516 F.3d at 1026[10]; *Spannaus*, 824 F.2d at 55. Therefore, the more absolute "shall be forever barred" language of 28 U.S.C. § 2401(b) should also be considered jurisdictional. *See* 28 U.S.C. § 2401(b).

Although Mr. Hagan identifies *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S.Ct. 817 (2013), and *Norman v. United States*, 467 F.3d 773 (D.C. Cir. 2006), neither case supports his position. Mr. Hagan cites *Norman* as authority for the idea that "equitable tolling may apply where a plaintiff or complainant has been 'induced' or 'tricked by his adversary's conduct to miss a deadline to file a claim."

---

[10]     As the District Court noted, "*Smith* relied in part on *P&V Enterprises v. U.S. Army Corps of Engineers*, 466 F. Supp. 2d 134 (D.D.C. 2006), which was affirmed by the D.C. Circuit on alternate grounds when they dismissed for lack of subject matter jurisdiction instead of failure to state a claim. *See P&V Enterprises v. U.S. Army Corps of Engineers*, 516 F.3d 1021, 1026 (D.C. Cir. 2008). In that case, the Circuit stated "the court has no occasion to address potential implications of" *John R. Sand*. *Id*. at 1027 and n.2." JA 276 n.5.

-44-

Appellant's Brief at 45 (citing *Norman*, 467 F.3d at 776)). Although this Court

concluded that, "it appears that this Court retains its equitable authority to toll the

FTCA's statute of limitations in appropriate circumstances" (*Norman*, 377

F.Supp.2d at 100), this decision was reached before the Supreme Court clarified

that equitable tolling would not be appropriate for a jurisdictional statute of

limitations.  *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S.Ct. 817, 824 (2013)

(noting that there is no equitable tolling under a jurisdictional statute of

limitations).  Furthermore, this Court in *Norman* affirmed the District Court's

decision, which had dismissed that plaintiff's case under Rule 12(b)(1) for lack of

subject-matter jurisdiction for his failure to file an administrative claim.  *See*

*Norman v. United States*, 377 F.Supp.2d 96, 101 (D.D.C. 2005) *affirmed* 467 F.3d

773 (D.C. Cir. 2006).

　　　Similarly, Mr. Hagan cites to *Sebelius v. Auburn Reg'l Med. Ctr.* for the

proposition that "the principle of equitable tolling can be equally applied whether

the defendant is a private individual or the United States government."  Appellant's

Brief at 45 (citing *Auburn Reg'l Med. Ctr.*, 133 S.Ct. at 821-22).  While this is a

generally true statement, the problem with Mr. Hagan's use of this authority is that

the Supreme Court in *Auburn Reg'l Med. Ctr.* held that equitable tolling did not

apply to a statute of limitations governing administrative appeals even though the

statute of limitations was "non-jurisdictional."  *Auburn Reg'l Med. Ctr.*, 133 S.Ct.

-45-

828-29.  Although some courts have considered the FTCA's statute of limitations in light of *Auburn Reg'l Med. Ctr.,* (*see, e.g., Wong* v. *Beebe*, --- F.3d ---, 2013 WL 5539621 (9th Cir. Oct. 9, 2013) (en banc)), such an analysis is unnecessary in this case because Mr. Hagan cannot establish equitable tolling even if it were available.[11]

> ### B.    Even if Equitable Tolling Could Apply to the FTCA's Statute of Limitations, The Undisputed  Facts of This Case Do Not Give Rise to A Claim of Equitable Tolling

Mr. Hagan's argument for equitable tolling is unpersuasive primarily because it speaks only of equitable tolling in conclusory or theoretical terms.  *See, e.g.,* Appellant's Brief at 8 ("Disallowing jurisdictional discovery also brought to a halt any endeavor Mr. Hagan and L.C.H. might have made in an effort to

---

[11]     It is also important to note that the Ninth Circuit's precedent differs in a meaningful and case determinative way from that of this Circuit as to whether the FTCA's statute of limitations is jurisdictional.  In *Wong*, the Ninth Circuit started with an analysis of the language of 28 U.S.C. § 2401(b) and noted that it was substantially similar to the language of 28 U.S.C. § 2401(a).  *See Wong v. Beebe*, 732 F.3d 1030, 1038 (9th Cir. 2013).  Under existing Ninth Circuit precedent that Circuit had decided that 28 U.S.C. §2401(a) was a non-jurisdictional statute of limitations.  *Id.*  (citing *Cedars–Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir.1997)).  Here, to the contrary, this Circuit has reached the opposite conclusion regarding 28 U.S.C. § 2401(a) and has long held that 28 U.S.C. § 2401 is jurisdictional. *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987).  Accordingly, even were this Circuit to apply the same analytic framework as the Ninth Circuit, this Circuit's precedent would dictate a different result.  Therefore, the more restrictive language of 28 U.S.C. § 2401(b), which states that a "tort claim against the United States shall be forever barred," should lead to the consistent conclusion that, in this Court, the FTCA's statute of limitations is jurisdictional.

-46-

determine whether equitable tolling applied in the instant case."); 39

("Nevertheless, Mr. Hagan and L.C.H. were entitled to conduct discovery as to

whether these statements were made in furtherance of delaying – or altogether

avoiding – the filing of a claim by lulling Mr. Hagan into a false sense of security

until such time as the statute of limitations had run.").  Even were equitable tolling

available under the FTCA's statute of limitations, Mr. Hagan cites no authority that

allows equitable tolling of the statute of limitations after the putative plaintiff has

the necessary information to file his or her claim.  As discussed above, Mr. Hagan

had sufficient information regarding L.C.H.'s injury and its cause.  *See* JA 278

(noting Mr. Hagan did not contest in September 2007 he knew his child had a

stroke, that medical records indicated brain tissue death, that he and his wife were

told of severe neurological injuries, that he and his wife expressed concerns about

L.C.H.'s neurological health).

    "Equitable tolling permits a plaintiff to avoid the bar of the limitations

period if despite all due diligence she is unable to obtain vital information bearing

on the existence of her claim." *Smith–Haynie v. Dist. of Columbia*, 155 F.3d 575,

579 (D.C.Cir.1998) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451

(7th Cir.1990)).  "Generally, a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that [s]he has been pursuing [her] rights diligently,

and (2) that some extraordinary circumstance stood in [her] way." *Pace v.*

-47-

*DiGuglielmo*, 544 U.S. 408, 418 (2005) (*citing Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Here, however, Mr. Hagan has not demonstrated below or before this Court that he was missing "vital information bearing on the existence of" his claim. The relevant information for his claim to accrue was already in Mr. Hagan's possession in September 2007.   The discovery rule states that a cause of action does not accrue until the plaintiff "'has discovered both his injury and its cause.'" *Sexton*, 832 F.2d at 633(quoting *Kubrick*, 444 U.S. at 120).  In order for the discovery rule to be triggered at all in this case, Mr. Hagan needed to show that he was not immediately aware of L.C.H.'s injury.  However, he specifically acknowledges that he was contemporaneously informed that L.C.H. had suffered a stroke, and that "I understood at that time that L.C.H. was very sick."  JA 146.

While Mr. Hagan went on to state that "within months" he was told that there were no discernible complications from the stroke, Mr. Hagan fails to cite any authority to support the position that a later, different, or more optimistic diagnosis restarts the clock for claim accrual purposes.  In his administrative claim, Mr. Hagan even stated that the very evidence that demonstrates H.I.E. was present in September 2007, and it is undisputed that he was aware of it.  JA 274 ("According to the administrative claims filed by Hagan and L.C.H., when L.C.H. was diagnosed with hypoxic ischemic encephalopathy around March 2009,

'imaging studies in 2009 did not reveal any new lesions when compared with the brain imaging studies performed in September 2007.'"). Because it is also undisputed that Mr. Hagan knew of L.C.H's stroke and what he alleges was the cause of the stroke, there is no basis for equitable tolling because he was missing no "vital information bearing on the existence" of a claim.

Indeed, the Eighth Circuit, which has found the FTCA's statute of limitations jurisdictional but also allows equitable tolling, specifically considered a similar case and found that equitable tolling does not apply to "conflicting or inaccurate diagnoses," reasoning that "it would be impractical to conclude that the limitations period stops and starts depending on the diagnosis of each doctor who examines a patient after the occurrence of an injury. Once a plaintiff is aware of the facts of the harm done to her, she has a duty to exercise due diligence in investigating its cause, and '[w]hether the advice received is competent or incompetent makes no difference to the accrual of [her] claim.'" *Ingram*, 443 F.3d at 963 (citation omitted).

Finally, although Mr. Hagan notes that some of the doctors treating L.C.H. were government employees, it is unclear what bearing this has either on his analysis or the availability of equitable tolling. As noted, it is undisputed that Mr. Hagan knew the critical facts of this case. Before the District Court Mr. Hagan also admitted having access to and copying the medical records of L.C.H. in

-49-

September 2007.  JA 146 (admitting that he copied records from L.C.H.'s medical

chart while he was at Children's Hospital in early September 2007).  It is possible

that Mr. Hagan notes that some of the doctors (but not all) involved in L.C.H.'s

care were government doctors in an effort to carry his burden to show that "(1) that

he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Here, however, it is undisputed he knew the key facts.  Mr. Hagan does not claim

that he requested certain, crucial records from government doctors and was denied

them.  He also does not challenge what the contemporaneous records show he was

told in September 2007.  Importantly, he has not asserted that he sought medical or

legal advice in determining whether he had a viable claim and was hampered to

that end in some way by government actors.  In short, he has failed to show that he

lacked crucial information or that he was in any way hampered in his pursuit of

information; therefore, even were equitable tolling available under the FTCA, it

would not apply here.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's

decision granting defendant's motion to dismiss.

RONALD C. MACHEN JR.
United States Attorney

*R. Craig Lawrence*
R. CRAIG LAWRENCE
Assistant United States Attorney

*John J. Gowel*
JOHN J. GOWEL
Special Assistant United States Attorney

-51-

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I certify that this brief conforms to the type-volume limitation imposed by

Fed. R. App. P. 32(a)(7)(B)(i) and consists of <u>12,586</u> words.


<u>*/s/ John J. Gowel*                    </u>
JOHN J. GOWEL
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Brief for Appellee was served through the Court's ECF system to counsel for appellants, and on the mover-intervenor by first-class United States mail, postage prepaid, addressed to

Dana Wilson
5532 Woodlawn Manor Ct
Alexandria VA 22309

on April 25th, 2014.

*/s/ John J. Gowel*
JOHN J. GOWEL
Special Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2574